**237 P.2d 799**

**BROWN v. KARAS.**
**No. 5220.**

Supreme Court of Arizona.

Nov. 26, 1951.

Rehearing Denied Jan. 8, 1952.

H. Verlan Andersen, Milton L. Ollerton, of Phoenix, for appellant and cross-appellee.

Laney & Laney, of Phoenix, for appellee and cross-appellant.

PHELPS, Justice.

Wilburn Brown, hereinafter referred to as Brown, commenced an action in the superior court of Maricopa County to recover from James Karas, hereinafter called Karas, the sum of $10,000. Karas in his answer, denied the indebtedness and filed two separate counterclaims. In the first counterclaim he asked for judgment for $40,000 which he claimed Brown owed him under the terms of an agreement entered into by the parties on October 5, 1945. In the second counterclaim he asked for damages for a felonious assault he alleged to have been committed upon his person by Brown. The cause was tried to a jury and verdicts returned in favor of Karas and against Brown on the complaint; in favor of Karas and against Brown on the first counterclaim, and awarding Karas damages in the sum of $40,000; and in favor of Brown and against Karas on the second counterclaim, awarding Karas nothing thereon. Judgment was entered upon the verdicts accordingly.

The trial court thereafter denied Brown's motion for judgment notwithstanding the verdict and his motion to vacate the judgment against him and for a new trial on his complaint and granted his motion for a new trial on Karas' first counterclaim. The court also granted Karas' motion for a new trial on his second counterclaim.

Brown appeals from the order of the trial court denying his motion to vacate and set aside the judgment entered on

his complaint, and from the order denying his motion for a new trial. Karas appeals from the order of the trial court granting Brown's motion for an order setting aside the judgment entered upon his first counterclaim and from the order granting Brown's motion for a new trial thereon.

In order to clarify the issues presented, we believe it necessary to set forth in considerable detail the facts leading up to this litigation which are as follows:

Brown and Karas first became acquainted in November, 1944. In April 1945 Karas sold Brown a tavern he was then operating on East Van Buren Street near Phoenix. Karas at that time owned a number of perlite claims located near Superior, Arizona. He was also the owner of considerable machinery located on East Van Buren Street used by him for processing or "popping" perlite and had been engaged on a small scale in processing the same. He had likewise become the owner of all rights to a pending patent on the "popping" process of this material which as we understand it, is designed to expand the perlite originally extracted from the earth and to reduce its specific gravity. The whole property sold to Brown represented an investment by Karas of approximately $32,000.

Karas lived nearby and was a frequent visitor at the tavern. He first talked to Brown about selling him the property here involved as early as March, 1944. They subsequently talked it over on a number of occasions but Brown testified he did not become very much interested until shortly before October 5th, the date on which the first agreement to sell was reduced to writing and signed by Karas. At that time Karas had several prospects of sale, one of which was apparently ready for closing for the sum of $45,000 with a down payment of $20,000. Brown knew of this and persuaded Karas to not consummate the sale and thereupon entered into an agreement with him to purchase the perlite claims, the machinery and the pending patent rights for the "popping" process for the sum of $50,000, $10,000 payable in cash and the balance of $40,000 to be paid in installments of $500 per month beginning three months after the date of the agreement; and in addition thereto Karas was to receive 20% of the capital stock of a corporation to be thereafter organized by Brown to take over the perlite operation. This agreement as above stated was evidenced by a written memorandum, written by Brown, bearing date October 5, 1945.

Subsequently, on October 19, 1945, Brown prepared another written agreement in which it is provided that "This agreement expressly voids and cancels out that certain agreement executed by first party to second party, October 4, 1945." (This date unquestionably is a typographical error and refers to the memorandum to which reference is hereinabove made bearing date October 5, 1945.) The latter agreement was signed by both Brown and Karas. The

agreement of October 5, 1945, was only signed by Karas but the name of Brown was incorporated in the body of the memorandum and named therein as the purchaser of the property sold to him by Karas.

Brown claims the agreement of October 19th is controlling in determining the rights of the parties while Karas claims that his signature thereto was procured by fraud and deceit; that he cannot read and that the instrument read to him by Brown was entirely different from the actual contents of the instrument to which his name is subscribed; that such instrument is therefore invalid and of no effect and that the rights of the parties are to be determined by the agreement of October 5th.

Brown simply alleges in his complaint that Karas was indebted to him in the sum of $10,000 without indicating that it was the down payment on the agreement of October 5th. Karas answered, denying the indebtedness and filed two separate counterclaims, the first of which alleges the terms of the agreement between him and Brown bearing date October 5, the balance unpaid thereon, and that the agreement of October 19, 1945, was procured through trickery, fraud and deceit and by reason thereof is wholly invalid and of no force and effect; that Brown has wholly failed to pay the balance due under the terms of the original agreement and asks for damages in the sum of $55,000.

The second counterclaim is in nowise involved in this appeal and will therefore be disregarded.

We will first consider the assignments of error upon which Brown relies in support of his appeal. His first assignment is directed at the court's refusal to grant him a judgment on his complaint and judgment on the first counterclaim notwithstanding the verdict. An examination of the notice of appeal indicates that no appeal was taken from the ruling of the court denying his motion for judgment n. o. v. The matter is therefore not before us and will not be considered.

The second assignment is based upon the refusal of the trial court to grant Brown's motion for a new trial on his complaint. The motion for a new trial is based in part upon the ground that the agreement of October 5th had been induced by fraud and had been rescinded by the latter agreement of the parties bearing date October 19th. Brown's contention in this respect would be correct if we assume that the agreement of October 5th was invalid because of its fraudulent inducement or that the agreement of October 19th was a valid agreement. If the execution of the latter agreement by Karas was procured by trickery, fraud and deceit as alleged in the first counterclaim it was not a valid agreement. If its execution was free from fraud it, of course, was valid. The same rule of law applies to the original agreement of

October 5th. These questions were presented to the jury on conflicting evidence and proper instructions on the law applicable thereto. The issues were resolved in favor of Karas, which was to the effect that the agreement of October 5th was valid and the agreement of October 19th was invalid. It follows that the court correctly denied the motion for a new trial based upon that ground.

■ As a further ground of error claimed to have been committed by the court in denying his motion for a new trial Brown contends that counsel for Karas was guilty of prejudicial conduct in cross-examining Brown by asking him, in substance, if the fact that he was keeping 20 one-thousand dollar bills on his person had any connection with Government income tax. If objection had been interposed at the time to that question it should have been sustained by the court as being immaterial but certainly it would not have constituted reversible error even if objection had been made and overruled by the court. It is next contended that the verdict and judgment against Brown on his complaint was not justified by the evidence. We fail to find any merit at all in this contention. It is our view that the evidence reasonably supports the verdict.

■ Lastly it is contended that the court erred in giving instructions 2, 3, 6 and 7 requested by Karas. Instruction No. 2 reads as follows:

"In order for the plaintiff to recover on the theory of fraud and deceit he must have established the following elements of such a cause of action: (1) that certain representations were made to him by the defendant, (2) that those representations were false, (3) that those representations were material, (4) the defendant's knowledge of the falsity of the representations or ignorance of their truth, (5) the intention on the part of the defendant that the representations be acted upon by the plaintiff in the manner reasonably contemplated, (6) the plaintiff's ignorance of the falsity of the representations, (7) his reliance on the truth of the representations, (8) his right to rely thereon, and (9) his consequent and proximate injury.

"If the plaintiff has failed to establish any of these elements of a cause of action for fraud and deceit, then he is not entitled to recover any money from the defendant."

This instruction has been so often approved by us where allegations of fraud and deceit are involved that no citation of authority is deemed necessary. Although Brown did not properly allege fraud in his reply to Karas' first counterclaim, the cause was tried upon that theory and this court will treat the reply as sufficient especially in view of the fact that no question was raised concerning its sufficiency. The court properly gave the instruction. In fact it would have constituted reversible error not to have done so.

Instruction No. 3 reads as follows: "I instruct you that fraud is never presumed, and that anyone charging fraud has the burden of establishing it by clear and convincing proof."

This is unquestionably the law not only in this jurisdiction but is the universal rule.

Instruction No. 6 reads as follows: "I instruct you that where a contract has been partly performed, and further performance is abandoned voluntarily by both of the parties, there can be no recovery for what has been done under the contract by either party, unless such right of recovery is reserved by the parties at the time when such abandonment takes place, either by express or implied agreement.

Instruction No. 7 reads as follows: "I instruct you that where the parties to a contract of sale and purchase, upon which the purchaser has made a partial payment, agree to cancel the contract, then the purchaser has only such rights to be restored to his original position as may be given him by the agreement of cancellation, and if no stipulation is made for restoring the status quo as between the parties, the purchaser is not entitled to recover a partial payment."

We are of the view that the last two instructions above quoted correctly state the law on the legal propositions covered by them but they were improperly given. This is true for the reason that the question of whether the agreement of October 19th, if valid, amounted to an abandonment, a rescission or a cancellation of the agreement of October 5th was a question of law for the trial court in construing the language used therein and not a factual question for the jury. The jury found the agreement of October 19th to be invalid and it became immaterial whether it constituted an abandonment, a cancellation or a rescission. Had this agreement been found to be valid by the jury it clearly shows that it was the intention of Brown who prepared it that it should have the effect not of rescinding but of cancelling and rendering void the agreement of October 5th, and it would have been the duty of the trial court to so construe it. It therefore follows that the giving of instructions 6 and 7 was harmless error.

This takes care of all of the assignments presented by Brown except assignment of error No. 6 which is predicated upon a misunderstanding of the verdict and judgment entered upon Karas' second counterclaim. The stipulation filed by counsel on this matter January 11, 1950, makes it unnecessary to consider this assignment.

We will now consider in so far as necessary the assignments presented by Karas on his cross-appeal, all of which are based upon the contention that the court erred in granting Brown's motion for a new trial on Karas' first counterclaim.

Brown set forth in his motion for a new trial fourteen separate grounds therefor,

only a few of which are sufficiently specific in character to apprise the court of the nature of his claim. There is nothing in the record to indicate upon what ground the order for a new trial is based.

Counsel for Karas has undertaken to surmise the grounds upon which the court predicated its order and has pointed out the only portions thereof which in our view are sufficiently definite to deserve consideration and we find nothing in any of the grounds mentioned which justified the trial court in ordering a new trial.

We have carefully studied the entire record including the transcript of the evidence and are of the opinion as stated above that the verdicts of the jury on both the complaint and first counterclaim find reasonable and substantial support in the evidence. In any event the verdicts having been reached by the jury upon conflicting evidence the court is bound by its conclusion. We therefore hold that the verdicts and judgments entered thereon are fully justified by both the law and the evidence.

The determination of the issues involved in the complaint and in the first counterclaim must be reached from a consideration of the same evidence and the same principles of law. If the agreement of October 5th was invalid by reason of the fraud and deceit of Karas in procuring its execution, Brown should have recovered on his complaint and Karas should have lost on his first counterclaim. If it was valid and not rescinded by the agreement of October 19th Karas should have prevailed on his counterclaim. As pointed out above these issues, as to the validity of both agreements were properly presented to the jury and determined adversely to Brown on both the complaint and counterclaim.

We have hereinabove fully discussed all other possible grounds upon which the motion for a new trial on the counterclaim could have been granted. We find nothing in the record justifying the court in granting the motion on the first counterclaim. It was therefore reversible error for the court to grant said motion.

The judgment of the trial court on the complaint is affirmed and the order granting Brown's motion for a new trial on the first counterclaim is set aside and the trial court is hereby directed to reinstate the judgment on said counterclaim in favor of Karas and against Brown in the sum of $40,000 and costs.

UDALL, C. J., and STANFORD, DE CONCINI and LA PRADE, JJ., concurring.