556 P.2d 1156

**In the Matter of the Appeal in PIMA COUNTY, SEVERANCE ACTION NO. S–110.**

**No. 2 CA–CIV 2038.**

Court of Appeals of Arizona, Division 2.

Sept. 7, 1976.

Rehearing Denied Oct. 6, 1976.

Petition for Review Denied Nov. 9, 1976.

**554**

Philip M. Haggerty, Phoenix, for appellant-mother.

Bruce E. Babbitt, Atty. Gen., Phoenix, by Charles E. Buri, Asst. Atty. Gen., Tucson, for appellee-State.

Sidney F. Wolitzky, Tucson, for appellee minor child.

## OPINION

KRUCKER, Judge.

Appellant, natural mother of a minor child, appeals a juvenile court order severing the parent-child relationship. The juvenile court made extensive findings of fact and conclusions of law, including, *inter alia,* that two grounds for termination existed: that appellant had abandoned the child and that she had wilfully abused the child. Both of these grounds were alleged in the petition filed by the Department of Economic Security, which had the care, custody and control of the child.

Although appellant has presented six questions for review, the central thrust of four concerns the finding of wilful abuse as a ground for termination. However, if one of the grounds stated has the requisite evidentiary support, we need not consider both.

Our review of the evidence satisfies us that it supports the juvenile court's conclusion that the grounds for termination set forth in A.R.S. § 8–533(1) existed. The subject statutory provision provides:

"That the parent has abandoned the child or that the parent has made no effort to maintain a parental relationship with the child. It shall be presumed the parent intends to abandon the child if the child has been left without any provision for his support and without any communication from such parent for a period of six months or longer. If in the opinion of the court the evidence indicates that such parent has made only token efforts to support or communicate with the child, the court may declare the child abandoned by such parent."

The record reflects the following. The child was born in March, 1965, and in November, 1965, was adjudicated a dependent child and placed in the custody of the Department of Economic Security. Appellant maintained contact with DES and her situation had so improved that on September 9, 1966, the child was returned to her. In January, 1967, DES was again given custody of the child, which had been hospitalized in a battered condition. Appellant was charged with aggravated battery because of the child beating, pled guilty, and was sentenced to six months in the Maricopa County Jail. While incarcerated, appellant did write monthly to DES concerning the child and sent him a birthday present. In November, 1967, she informed DES of her release from jail and in December made telephone inquiry concerning the child's well-being. With the exception of the period from September, 1966 until February, 1967, the child, at the time of the severance hearing, had been in at least seven foster homes. After appellant's release from jail, almost four years elapsed before she personally visited the child in October, 1970. During this period, appellant's only manifestations of interest in the child were to send him a couple of gifts, a Christmas card, to make sporadic inquiries of DES via telephone or letter regarding the child's situation, and to request DES to furnish pictures of him. The evidence also reflects that during this four-year period, the child was actually placed for adoption

through the Cochise County Family Welfare Department and traveled to Germany with his adoptive parents. This adoption attempt was a failure. The child was returned to the United States and from April, 1969 through 1972 was in a Tucson foster home. It also appears that in November, 1968, appellant wrote a letter to a social worker expressing her belief that adoption might be best for the child and requesting that pictures of him be sent to her in the future.

It was difficult for DES to maintain contact with appellant since her address changed often. At a review hearing in October, 1970, the juvenile court suggested that DES try to transfer the child to a foster home in Maricopa County so that it would be easier for the mother to see the child. None, however, was available at that time and it was not until 1972 that the child was moved to a foster home in the Phoenix area.[1] Appellant saw the child often at the foster home until March, 1973, when he was returned to a Pima County foster home. It appears that the reason for the transfer to Pima County was the caseworker's concern about possible physical harm to the child from visiting his mother's home and a report from the Abuse Protective Services Subabuse Committee which contained a recommendation that the mother and child probably could not live together successfully. This report recommended a psychological examination of the mother. The mother admitted that she refused two requests that she undergo such evaluation. The child was examined by a clinical psychologist whose written report suggested that the child stay in a foster home for another year so as to maintain an atmosphere of stability. He testified at the hearing that there had been improvements in the child's behavior because of the excellent foster home care he was then receiving. At a court hearing in April, 1973, appellant was advised by the case-

worker that he would consider allowing her visit with the child in his office. Appellant responded that she wouldn't drive to Tucson to make such visits. According to the caseworker, he did not decide to proceed with severance until April, 1974, because:

"... I wanted to find out if there was still a possibility that [appellant] had been mistreated in the episode with [child] being up there close to her and then being precipitously removed and brought back to Tucson. I wanted to investigate that a little bit more and do a little bit more study."

Appellant testified that she had been in jail more than two times, that she had not requested visitation with the child since 1970, that she had sent about $20 to the child over a ten-year period, and that it would not surprise her if she had provided DES with about 15 addresses during that period. Also, that she was then unemployed and made money babysitting.

The court found as a fact that appellant had made little or no effort to maintain a parental relationship with the minor child and had not communicated with the minor child for a period of six months on several occasions, one of which was between the hearing dates of April, 1973, and May, 1974. The court also found that between 1970 and 1973 DES made reasonable attempts to reunite the child with appellant and that said attempts failed; that DES did not do all that was reasonable and proper to encourage appellant to communicate with and provide financial support for the child since April, 1973, but, nevertheless, appellant should have made more effort on her own in these respects; that the court was of the opinion that DES should have moved for severance in April, 1973, and was of the further opinion that severance should have properly been commenced in 1970 when the new juvenile code pro-

---

1. The delay apparently was due to a combination of circumstances—dilatoriness on the part of DES and inability to locate appellant

so that a home evaluation could be accomplished.

**556**

viding for judicial termination of parental rights became operative.

It is not the function of this court to interfere with the juvenile court's findings of fact in severance proceedings unless they are clearly erroneous, i. e. there is no reasonable evidence to support them. In re Appeal in Maricopa Cty. Juv. Action No. JS–378, 21 Ariz.App. 202, 517 P.2d 1095 (1974). In the case of *Anonymous v. Anonymous*, 25 Ariz.App. 10, 540 P.2d 741 (1975), we noted that the term "abandonment" must be somewhat elastic and questions of abandonment and intent are factual questions for the resolution of the trial court. We pointed out that the majority of jurisdictions whose statutes predicate adoption without consent upon abandonment interpret "abandonment" as intentional conduct on the part of a parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. We held that although the best interests of the child is a valid factor in deciding an abandonment allegation, abandonment cannot be predicated solely on the best interests of the child and that the appropriate test is "whether there has been conduct on the part of the parent which implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship." 540 P.2d at 743.

The evidence supports the trial court's finding that the Department of Economic Security made reasonable attempts between the years 1970 and 1973 to reunite the child with appellant and that said attempts failed. The evidence also supports the finding that appellant had made little or no effort to maintain a parental relationship with the child and for several six months' periods had not communicated with the child while he was living in foster homes. We do not agree with appellant that the Department of Economic Security completely frustrated her efforts to establish a meaningful contact with her child. Although appellant over the years made sporadic inquiries as to the child's well-being, we conceive that her gestures were no more than mere token efforts, and objective consideration of her behavior as a course of conduct implied a conscious disregard of the obligation owed by her to her child. Under these circumstances, she cannot complain that the Department of Economic Security should have done more to reunite her with her child when her own efforts were practically nonexistent.

The order severing the parental relationship is affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.