555 P.2d 892

**In the Matter of the Appeal in PIMA COUNTY, JUVENILE ACTION NO. S–139.**

**No. 2 CA–CIV 2198.**

Court of Appeals of Arizona, Division 2.

Sept. 17, 1976.

Petition for Review Denied Oct. 26, 1976.

George Haskel Curtis, Tucson, for appellant.

Virginia C. Howard, Tucson, for appellee Minor.

Chandler, Tullar, Udall & Richmond by Joseph R. McDonald, Tucson, for intervenors.

KRUCKER, Judge.

A juvenile court order which decreed that appellant was not the father of a one-year-old male child and, in the alternative, that the parental relationship be severed, is the subject of this appeal.

Extensive findings of fact and conclusions of law were entered. The court found, inter alia, that the child was born on December 21, 1974, at which time the mother was unmarried; that on January 7, 1975, the mother voluntarily and unconditionally consented to the child's adoption placement by the Catholic Social Services of Tucson and executed a waiver of notice and appearance to any and all proceedings in connection with severance and adoption; that appellant and the mother, although unmarried, began living together in July, 1974, and continued to live together until after the birth of the child; that the child

was conceived in March or April of 1974, at which time appellant and the mother were living separate and apart, seeing each other on Monday nights and Tuesdays of each week with each being free to go out with others during the balance of the week; that the mother had informed the social worker, when placing the child for adoption, that she was unable to say who the father of her child was and that it could be one of two men; that on January 7, 1975, the mother swore under oath that she could not name and did not know who the father of her child was; that while living with the mother during her pregnancy appellant noticed that she looked heavier than normal and asked her if she was pregnant; and that appellant took the mother to the hospital on the day of the child's birth and later visited her in her hospital room which was on the maternity floor.

The court also found that in January, 1975, appellant found a copy of the child's birth certificate among the mother's papers; that he did not contact the Catholic Social Services until April 25 and thereafter met with the social worker on two occasions, the second of which being May 13 accompanied by the mother; appellant contacted an attorney but took no action until served with an order to show cause on July 8, 1975, and with a subsequent order to appear for a hearing on September 8, 1975.

Additionally, the court found that appellant took no steps to contest the severance and made no efforts to ascertain the whereabouts of the child or offer support; that he had made no arrangements for the care and support of the child; that he had stated that he and the mother were going to get married but as of the date of the hearing they had not done so; that appellant had not responded to the efforts of the child welfare worker to contact him and as a consequence, no home study had been made; that appellant's periods of employment had been infrequent and sporadic and although he knew of the child's birth in January, 1975, his next employment was not until March 7, 1975, which terminated in May, 1975; and that he did not again become employed until after the September 8 hearing.

Finally, the court found that appellant, when not employed, had been supported by others, had lived with the child's mother during periods when he was unemployed at least since July, 1974, had made no effort to maintain a parental relationship with the child after he reasonably should have known that the child had been conceived, that the child had been left without any provision by appellant for the child's support since the child's conception and thus he had abandoned the child, and that appellant had made no effort to support the child.

The court concluded that appellant had not met the burden of showing that he was the natural father of the child and that, in the alternative, had abandoned the child.

Appellant urges several grounds for reversal, some directed to the paternity issue and others directed to the severance issue. Since we agree with the court's finding that grounds for termination existed, we need not address ourselves to the errors claimed relative to the paternity issue.

Appellant contends it was error to allow into evidence a home study report made by a California agency for the reason that he had no opportunity to cross-examine the author of the report, that the court erred in permitting an oral social study report based on in-court observation of appellant, and that the court erroneously allowed appellant's fitness to care for the child to be raised.

A.R.S. § 8–536 provides:

"A. Upon the filing of a petition the court shall order that the division, an agency or another person selected by the court conduct or cause to be conducted a complete social study and that a report in writing of such study be submitted to the court prior to hearing, except that when an agency is the petitioner, either

in its own right or on behalf of a parent, a report in writing of the social study made by such agency shall accompany the petition. The court may order any additional social study it deems necessary. The social study shall include the circumstances of the petition, the social history, the present condition of the child and parent, proposed plans for the child, and such other facts as may be pertinent to the parent-child relationship. The report submitted shall include a specific recommendation and the reasons therefor as to whether or not the parent-child relationship should be terminated.

B. The court may waive the requirement of the social study when the court finds that to do so is in the best interest of the child."

The record reflects that on September 23, 1975, the juvenile court ordered the Department of Economic Security to perform an expedited social study of appellant and his home, to file said report in writing before November 1, 1975, and to make a recommendation for or against severance, stating the reasons. By letter dated October 14, 1975, a social services worker with the Department of Economic Security advised the court that appellant was living in California and the request for a social study was forwarded to the Santa Barbara County Department of Welfare with the hope of contacting appellant and having the social study report available by November 1. A written report dated October 30, 1975, was prepared by the California agency and forwarded to the Arizona Department of Economic Security. The report indicated that appellant was interviewed by the author of the report on October 27 and recited, inter alia:

"Based on my observations of Mr. ———, the limited information, his lack of discernable emotion concerning the child or its welfare, his unstable, intermittant employment, lack of concrete planning, I see no reason to consider upholding his paternal rights and/or to

place the child's care and custody with him. His plan to marry the natural mother may or may not eventuate. Should it eventuate then the child is to be cared for by a parent who voluntarily terminated her responsibility and care of the child. Should it not, his employment is tenuous and the question of child care arises.

My impression of Mr. ——— was of a man in his late 30's who sees the system as withholding, never meeting his needs, and at last he has found a means of asserting a right. I suspect he knew of the plans to place the child for adoption, was accepting of this until he learned there was a right that he could belatedly assert."

A social services worker for the Arizona Department of Economic Security testified as to the various attempts she had made to contact appellant, after learning that he had returned to Tucson, with a view to making a social study report. She wrote to appellant requesting that he contact her so as to set up an appointment and when she received no response, she so advised appellant's attorney. She also made several attempts to contact appellant by going to his local address but was unsuccessful and therefore unable to make the social study report.

The witness' recommendation was that appellant's natural rights be severed, based on her in-court observations. She testified that her report would have been more extensive if she had had the opportunity to make one and that the California report was helpful to her in that it confirmed her opinion.

■ We summarily reject appellant's attack on the court's consideration of the foregoing evidence. Any and all reports required by A.R.S. § 8–536 are admissible in evidence without objection. A.R.S. § 8–537(B). Any deficiency in the report and the necessity for allowing the social services worker to express her opinion based on her in-court observation of appellant was caused by his own conduct. At-

tempts to contact him more than a month prior to the severance hearing proved fruitless and he cannot now complain as to the admissibility of the social services worker's opinion. The sufficiency of her observations merely affected the weight to be given her opinion. *Carrizoza v. Zahn,* 21 Ariz.App. 94, 515 P.2d 1192 (1973).

 A.R.S. § 8–533 provides as grounds for termination of a parent-child relationship:

"1. That the parent has abandoned the child or that the parent has made no effort to maintain a parental relationship with the child. It shall be presumed the parent intends to abandon the child if the child has been left without any provision for his support and without any communication from such parent for a period of six months or longer. . . ."

As noted above, the juvenile court expressly found that appellant had made no effort to maintain a parental relationship with the child after he reasonably should have known that the child had been conceived, had made no efforts to support the child, and had left the child without any provision for support since its conception.

 We do not interfere with the juvenile court's findings of fact in severance proceedings unless they are clearly erroneous, i.e., there is no reasonable evidence to support them. In re Appeal in Maricopa Cty., Juv. Action No. JS–378, 21 Ariz.App. 202, 517 P.2d 1095 (1974). We defer to the trial court's assessment of credibility of witnesses and it would appear that appellant's story as to his lack of knowledge of the mother's pregnancy and the birth of the child was incredible under the circumstances of the case. Furthermore, assuming arguendo that he did not know of the birth of the child until January, 1975, appellant did not contact the Catholic Social Services until April 25 and made no real effort to provide for his child or ascertain its whereabouts.

We have interpreted "abandonment" as intentional conduct on the part of a parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. *Anonymous v. Anonymous,* 25 Ariz.App. 10, 540 P.2d 741 (1975). We believe that objective consideration of appellant's behavior as a course of conduct implied a conscious disregard of the obligation owed by him to his child, thus supporting a finding of abandonment.

Finding no basis for reversal, we affirm.

HOWARD, C. J., and HATHAWAY, J., concur.