584 P.2d 63

**In the Matter of the APPEAL IN MARICOPA COUNTY, JUVENILE ACTION NOS. A–23498 AND JS–2201 (consolidated).**

**No. 1 CA–JUV 59.**

Court of Appeals of Arizona,
Division 1,
Department B.

July 11, 1978.

Review Denied Sept. 7, 1978.

Frondorf & Thayer by Shirley H. Frondorf, Phoenix, for appellants.

Solomon, Relihan, Blake & Richter by Joseph C. Richter, Tempe, for appellees.

## OPINION

JACOBSON, Judge.

This appeal from a decision of the Juvenile Court of Maricopa County arising from a petition to sever parental rights asks us to determine what weight must be given to the interests of the child in such a proceedings.

Appellants, James A. Adams and Kathleen L. Adams, filed a petition for temporary custody of Don Heckrote, a minor, and a petition to terminate the parent-child relationship existing between the minor and his natural parents, Patricia McGinnis and John Heckrote. The matters were consolidated for hearing and the juvenile court subsequently denied the petition to sever parental rights and dismissed the petition for temporary custody. The Adams have appealed.

The facts are not in material dispute. The minor child involved was born on April 12, 1968 to Patricia McGinnis Heckrote and her then husband, John Heckrote. In March, 1969, the Heckrotes were divorced and although legal custody of the child was granted Mr. Heckrote, physical custody of the child was taken by Patricia. In 1971, Patricia married appellant James Adams and a child was born to this marriage on January 15, 1972. On March 7, 1974, Patricia and James Adams were divorced, Patricia obtaining the legal custody of their child.

On June 24, 1974, Patricia executed a document giving to Mr. Adams full care, custody and control of their child and also transferred physical custody of Don Heckrote to Mr. Adams. Since that time and until the juvenile court's order on November 25, 1977, Mr. Adams has had the physical custody and care of Don, along with his natural son. Mr. Adams subsequently remarried, and the present Mrs. Adams has joined in the petition for temporary custody of Don.

Sometime in 1977, Patricia again met her former husband, John Heckrote while in Florida. As a result of this meeting, Patricia and John have reconciled their prior differences and intend to remarry. At the time of the hearing in this matter, Patricia was still married to the second of the two husbands she married following her divorce from Mr. Adams. Patricia testified that as soon as she could establish legal residency in Florida, she intended to commence divorce proceedings so as to enable her to remarry John Heckrote.

Following the re-establishment of the relationship between Patricia and John, Patricia contacted Mr. Adams, seeking custody of Don. When this was refused, Patricia and John came to Arizona and attempted to obtain physical custody of their child. This was thwarted by Mr. Adams obtaining a temporary restraining order and the filing of the petitions which form the basis of this appeal.

At the time of the hearing in this matter and to facilitate the consolidation of the two petitions, sufficient time was not available to prepare a social study required by A.R.S. § 8–536. This procedure was acquiesced in by the Adams through their then counsel.

Following the presentation of evidence, the court made the following findings of fact which are material to this appeal:

"(3) James Adams has had custody of the child since the June, 1974, divorce from Patricia.

"(4) Pat has had frequent contact with Don by phone, and letter and in person since the June, '74 divorce.

"(5) John Heckrote has had no contact with Don between 1968 and November 9, 1977, except inferentially when contact was made by Pat after October 4, 1977.

"(6) The John Adams' home is apparently a fit and proper home.

"(7) There has been no evidence to indicate that the John Heckrote-Patricia McGinnis home is unfit or improper."

Based upon these findings, the court concluded:

"(2) Patricia McGinnis has not abandoned Don.

"(3) John Heckrote has abandoned Don but it would be unjust under the facts of this case to grant a decree thereon.

"(4) Petitioners have failed to carry their burden of proof."

Based upon these conclusions, the court dismissed both petitions.

On appeal, the Adams contend that (1) the juvenile court did not give proper consideration to the best interests of the minor child, (2) the juvenile court could not forego the social study required by A.R.S. § 8–536, and (3) in any event the court should have severed the parental rights of John Heckrote.

Before addressing these contentions, it should be pointed out that appellants do not seriously contend that the juvenile court's finding that Patricia had not abandoned the child is not supported by the evidence. Rather, they argue that either the best interests of the child require severance of parental rights or that the trial court's failure to consider the best interests of the child requires continuation of custody in Mr. Adams.

Turning to the first argument that the best interests of the minor child required, or at least should be considered in terminating parental rights, this issue is controlled by A.R.S. § 8–533. This statute sets forth the grounds for terminating the parent-child relationship:

"1. That the parent has abandoned the child or that the parent made no effort to maintain a parental relationship with the child  .   .   .

"2. That the parent has neglected or wilfully abused the child.

"3. That the parent is unable to discharge the parental responsibilities because of mental illness  .   .   .

"4. That the parent is deprived of his civil liberties due to the conviction of a felony  .   .   .

"5. That the parents have relinquished their rights to a child to an agency or have consented to the adoption."

■ Nowhere does the statute authorize the parent-child relationship to be terminated merely because such a termination may be "in the best interests" of the child. It is true that the state in its capacity as *parens patriae* may intrude into the parent-child relationship based upon the state's interest in the future well-being of minor children residing in this state and thus may properly legislate in the area and establish burdens of proof to allow termination, *Hernandez v. State ex rel. Arizona Department of Economic Security*, 23 Ariz.App. 32, 530 P.2d 389 (1975) or proceed with termination based upon *in rem* jurisdiction of a parent alone. *In re Appeal in Maricopa County, Juvenile Action No. JS–734*, 25 Ariz.App. 333, 543 P.2d 454 (1975). However, the power to intrude into this natural relationship based upon the best interests of the minor child is to be contrasted sharply with the basis upon which that power is to be exercised. As to the latter, the legislature has spoken that the power to terminate the parent-child relationship will only be exercised upon five specific grounds—no more or no less. Since the legislature has not deemed that the "best interests" of the child is a ground for terminating parental right, we cannot do so by judicial fiat.

■ Also to be contrasted is the power to sever parental rights and the power to place custody in parties other than the natural parents. The Arizona statutes make it

clear that even though the grounds for terminating the parent-child relationship may not exist, custody to the natural parents does not automatically follow such a finding.

A.R.S. § 8–538(D) provides:

"Where the court does not order termination of the parent-child relationship, it shall dismiss the petition, provided that where the court finds *that the best interests of the child require substitution or supplementation of parental care and supervision*, the court shall make such orders as it deems necessary." (emphasis added)

■ Thus, if the court determines that the best interests of the child shall require, it may order "substitution . . . of parental care," even though the court does not order severance of parental rights.

■ In Adams' second argument, it is the failure of the juvenile court to consider this alternative that is argued. We disagree. A.R.S. § 8–538(D) was specifically pointed out to the trial court and the argument was presented that Don's best interests required his continued custody in the Adams under the statute. We would have to ignore the record in this case if we were to hold that the juvenile court did not know its responsibilities or the alternatives that were available to it.

■ Having reached this conclusion, we must determine whether the evidence supports the trial court's implied finding that the best interests of the child did not require substitution of parental care.[1] While Patricia's past life cannot be said to be a model of stability, the Adams' past marital history is not the Rock of Gibraltar either. Moreover, there is evidence that the child sincerely loved his natural mother, and was upset when she left him. Apparently the

juvenile court believed Patricia and John had settled down and were prepared to make a happy and stable home for the child. John's past history in providing a home for an adoptive daughter lends credence to that belief. Considering the alternatives facing the court when it reached a determination that at least Patricia's parental rights could not be legally severed and the future legal uncertainty created for the child by placing custody in the Adams without being able to sever parental rights, we cannot say the court abused its discretion in placing custody of the child with his natural parents.

■ The Adams next argue that the failure of the trial court to order the social study required by A.R.S. § 8–536[2] requires reversal.

The facts surrounding this contention are that originally, when the petition to sever was filed, the court ordered the social study required by A.R.S. § 8–536. The hearing on the petition to sever was set for January 31, 1978. The matter first came on for hearing on November 7, 1977, on Adams' petition for temporary custody. At that time, with the approval of Adams' then counsel, it was agreed that the temporary custody issue could not be heard without touching on the issues presented by the severance petition. The counsel then agreed to vacate the January 31, 1978 hearing on the petition to sever and heard both matters a few days later in November, 1977.

All parties were aware that the social study could not be completed within the new time set for the hearing or the severance petition. No objection was raised by the Adams to hearing the matter without the social study. The ability of the trial court to proceed with the severance hearing without a social study was likewise not raised.

---

1. We do not determine, since it has not been argued to us, whether before a "substitution of parental care" can occur under A.R.S. § 8–538(D), the court must make a determination that the child in question is at least "dependent" under A.R.S. § 8–201(10), although such an argument may have merit.

2. A.R.S. § 8–536 provides in part:

"A. Upon the filing of a petition, the court shall order that . . . an agency . . . selected by the court conduct or cause to be conducted a complete social study and that a report in writing of such study be submitted to the court prior to hearing . . . ."

Since A.R.S. § 8–536(B) provides that the social study may be waived by the court, obviously such a social study is not jurisdictional to the juvenile court hearing the merits of the petition to sever. Under these circumstances, the failure of the Adams to present this issue to the trial court precludes this court from considering that non-presented issue on appeal. *Milam v. Milam*, 101 Ariz. 323, 419 P.2d 502 (1966).

Finally, Adams contend that at least John Heckrote's rights as a parent should have been severed. Considering that the natural mother's parental rights remained intact; that she was living with and intended to remarry the natural father, and that the child would be living in the natural father's home, we cannot say the juvenile court abused its discretion in failing to sever the natural father's parental rights.

The judgment and orders of the juvenile court are affirmed.

EUBANK, P. J., and WREN, J., concur.