647 P.2d 184

**In the Matter of the APPEAL IN MARICOPA COUNTY, JUVENILE ACTION NO. JS–4130.**

**1 CA–JUV 166.**

Court of Appeals of Arizona,
Division 1,
Department C.

May 13, 1982.

Review Denied June 15, 1982.

Francis G. Fanning, Tempe, for appellant.

Robert K. Corbin, Atty. Gen. by Edward B. Truman, Asst. Atty. Gen., Phoenix, for Arizona Dept. of Economic Sec.

Jane Bayham-Lesselyong, Phoenix, for minor children.

## OPINION

HAIRE, Judge.

We are faced with two basic issues in this appeal from an order of the juvenile court terminating the parent-child relationship between appellant and her two daughters. The first issue is the effect of the recent United States Supreme Court decision of *Santosky v. Kramer*, —— U.S. ——, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), on Arizona's termination of parental rights statute, A.R.S. § 8–537. The second and more difficult issue is whether there was sufficient evidence in this case to support the trial court's order terminating the parent-child relationship between appellant and her children.

## BURDEN OF PROOF

Arizona's statutes governing the termination of parent-child relationships provide:

"The court's findings with respect to grounds for termination shall be based upon a *preponderance of the evidence* under the rules applicable and adhering to the trial of civil causes." (Emphasis added). A.R.S. § 8–537(B).

In examining a similar statute from New York, the United States Supreme Court recently noted that the "function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of fact-finding, is to 'instruct the factfinder

concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" The court then used a three-part test based on *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine if the preponderance of the evidence standard was sufficient in matters involving the termination of parental rights. The court found:

"In parental rights termination proceedings, the private interest affected is commanding; the risk of error from using a preponderance standard is substantial; and the countervailing governmental interest favoring that standard is comparatively slight. Evaluation of the three *Eldridge* factors compels the conclusion that use of a 'fair preponderance of the evidence' standard in such proceedings is inconsistent with due process."

The court then held that a "clear and convincing evidence" standard "adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process." *Santosky v. Kramer, supra*.[1]

Therefore, Arizona's statute requiring only a preponderance of the evidence to terminate parental rights is unconstitutional and our juvenile court's findings with respect to grounds for termination must now be based on clear and convincing evidence.[2]

Before turning to the merits of this case, we point out the effect of burden of proof standards as they relate to appellate review. As we said in *Hopper v. Industrial Commission*, 27 Ariz.App. 732, 734, 558 P.2d 927, 929 (1976):

The decision, however, focuses on the state's *judicial* action of entering a termination order and thus in our opinion the standard would be applicable to all parental rights termination proceedings, regardless of whether the petitioner is a state agency or a private party.

---

**1.** The word "State" in the *Santosky* decision is used both to refer to the party bringing the petition to terminate parental rights and to refer to the judicial system which enters an order of termination. For example, the court in its holding states:

"Before a State [judicial system] may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State [party seeking termination] support its allegations by at least clear and convincing evidence."

**2.** *See In the Matter of the Appeal in Pima County Juvenile Action No. S–919,* 132 Ariz. 377, 646 P.2d 262 (1982).

"The purpose of the 'clear and convincing' standard is to guide the trier of fact in consideration of the evidence. It is not a test to be applied by an appellate court in passing on the sufficiency of the evidence. *Beeler v. American Trust Co.*, 24 Cal.2d 1, 147 P.2d 583 (1944). Therefore the finding of the trier of fact should be sustained if the evidence furnishes reasonable or substantial support therefor. *Murillo v. Hernandez*, 79 Ariz. 1, 281 P.2d 786 (1955); *Brown v. Karas* [73 Ariz. 62, 237 P.2d 799], *supra; King v. Uhlmann*, 103 Ariz. 136, 437 P.2d 928 (1968). Even where the more stringent 'beyond a reasonable doubt' standard is imposed as a guide for the trier of fact, questions concerning the credibility of the witnesses and the weight and value to be given to the testimony are considered as questions exclusively for the jury, *State v. Pieck*, 111 Ariz. 318, 529 P.2d 217 (1974), and the appellate court in reviewing the sufficiency of the evidence is only concerned with whether there is substantial evidence in support of the verdict. *State v. Childs*, 113 Ariz. 318, 553 P.2d 1192 (filed August 6, 1976.)" (Footnote omitted). *Accord, Stevenson v. Stevenson*, 132 Ariz. 44, 643 P.2d 1014 (1982); *Groth v. Martel*, 126 Ariz. 102, 612 P.2d 1065 (App.1979).

If an appellate court were to apply different standards of review depending on the burden of proof required for the particular proceeding, it would be substituting its resolution of factual issues for that of the trier of fact. Therefore, no matter what the burden of proof required in the proceedings below, we can only review the evidence to determine if there is substantial evidence to support the conclusion of the trier of fact.

In most cases now on appeal in which the termination proceedings occurred under the incorrect burden of proof, we would simply vacate the judgment and remand the case to allow the trial judge to make a new factual determination, applying the proper standard of proof. As the Supreme Court said in *Santosky*:

"We, of course, express no view on the merits of petitioners' claims. At a hearing conducted under a constitutionally proper standard, they may or may not prevail. Without deciding the outcome under any of the standards we have approved, we vacate the judgment of the Appellate Division and remand the case for further proceedings not inconsistent with this opinion." (Footnote omitted).

However, in this particular case, we hold that the evidence is insufficient to support an order of termination under any standard of proof and the case must therefore be reversed.

## THE ABANDONMENT STATUTE

The statute relevant in this case is A.R.S. § 8–533(B)(1):

"B. Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following, and in considering any of the following grounds, the court may also consider the needs of the child:

"1. That the parent has abandoned the child or that the parent has made no effort to maintain a parental relationship with the child. It shall be presumed the parent intends to abandon the child if the child has been left without any provision for support and without any communication from such parent for a period of six months or longer. If in the opinion of the court the evidence indicates that such parent has made only token efforts to support or communicate with the child, the court may declare the child abandoned by such parent."

A finding of abandonment under this statute requires evidence of "intentional conduct on the part of a parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." *Anonymous v. Anonymous*, 25 Ariz. App. 10, 12, 540 P.2d 741, 743 (1975); *accord, In the Matter of the Appeal in Pima County, Juvenile Action No. S–139*, 27 Ariz. App. 424, 555 P.2d 892 (1976); *In the Matter of the Appeal in Pima County, Juvenile Action No. S–624*, 126 Ariz. 488, 616 P.2d 948 (App.1980).

■ A presumption that the parent intended to abandon arises under this statute if the child was left without any provision for support and the parent did not communicate with the child for a period of six months. In this case, the trial court found that the appellant had written letters to the children during the period of care by the Department of Economic Security, thus impliedly finding that this presumption did not arise. Therefore, we do not address those portions of the parties' arguments relating to the "left without any provision for support" element of the presumption.[3]

■ The last sentence of the abandonment subsection allows a finding of abandonment where parents have made only token efforts to support or communicate with the child. This statutory provision cannot reasonably be construed to mean that a finding of "token efforts" alone will support a termination order; rather it means that "token efforts" by the parent to support or communicate with the child do not necessarily show an intent not to abandon. Even though mere "token efforts" are found, the court must also find, based upon the totality of the evidence, that the parent has abandoned the child.

## SUFFICIENCY OF THE EVIDENCE

■ The Arizona Department of Economic Security filed a petition in March 1981, seeking termination of the parent-child relationship between appellant and her two minor daughters.[4] The petition alleged as grounds for termination that appellant had abandoned the children pursuant to A.R.S. § 8–533(B)(1).[5] A hearing was held on August 11, 1981 at which the only witness to testify was a Department of Economic Security social worker. Since her testimony was the sole basis for termination, we will review in detail her testimony concerning the abandonment allegation.

Appellant's two daughters were placed in foster care in September 1979, and became wards of the court on December 10, 1979. The worker who testified was assigned the case in July 1980, and she relied upon reports of other caseworkers for information prior to that time. As to visits with the children by the mother during 1979, the caseworker testified:

"A. Okay. She visited on four occasions in 1979.

"Q. For the record, do you have the dates of those visits?

"A. 9–21–79; 11–8–79; 11–19–79 and 11–21–79.

"Q. And these visits were set up through D.E.S.?

"A. That is correct.

"Excuse me. There was one more visit 12–6–79. There were no further visits."

The caseworker met with the appellant in August 1980 and they discussed the children but appellant gave no explanation for her failure to arrange for visits. In September 1980 appellant attended the Foster Care Review Board meeting concerning her children.[6] On that same day, the caseworker gave appellant a "contract" listing the requirements necessary for appellant to gain return of the children. These requirements included attending an alcohol rehabilitation

---

3. Query: If a child has been committed to the care of the Department of Economic Security and is being cared for in a foster home, can the parent be said to have left the child "without any provision for support?".

4. The petition also sought termination of the parental rights of the children's fathers, but the fathers are not parties to this appeal and our discussion and holding are directed only toward the appellant herein.

5. The petition also alleged, pursuant to A.R.S. § 8–533(B)(3), appellant's inability to discharge parental responsibilities due to drug and alcohol abuse, but the trial court specifically found that there "is not sufficient evidence produced that this condition will continue for a prolonged indeterminate period, making her unable to discharge parental responsibilities." Thus, our inquiry is limited to the abandonment allegation.

6. Foster Care Review Boards were created by the legislature in 1978 to assist the juvenile court in its annual review of each child in foster care. Natural parents, foster parents and other interested parties may participate in this review process. See A.R.S. §§ 8–515.01 to 8–515.04.

program and obtaining stable housing. Visits with the children would follow after appellant was in an alcohol rehabilitation program for approximately 30 days. With regard to whether alcohol rehabilitation was a prerequisite to appellant seeing her children, the caseworker gave inconsistent testimony:

"Q. And those social contracts included certain steps that you expected her to perform before she would be allowed to visit her children; is that correct?

"A. The steps that I outlined were in an effort to regain custody of her children and I put in the contract, the body, that a visit would be held at the completion of her attendance of the alcohol rehabilitation program.

"Q. Are you saying to the court that that visit that you were not making that attendance to the rehabilitation program a condition to the visit?

"A. Yes.

"Q. You are saying that?

"A. That upon completion of the program she would have a visit with her children or a visit would be set up through the agency.

"Q. And the contract read 30-days in the program and then a visit; is that correct?

"A. That is correct."

But immediately thereafter she testified:

"Q. If she had not completed the 30-days would she have been entitled to a visit according to your commitment that you made an actual contract?

"A. If she asked for a visit we would have made other arrangements. I suggested the part of the visit part of the contract. She did not ask for the visit.

"Q. You are telling the court that you didn't put any strings on her visiting the children?

"A. The contract was basically was her getting the custody of the children returned; what steps she would need to do along the alcohol rehabilitation.

"There were other stipulations within the contract itself but as far as the visit, no."

Appellant entered such a program and stayed approximately one month. A visit with the children was thereafter arranged for November 6, 1980 but appellant did not appear for the visit because she had a cold. Appellant thereafter attended a Foster Care Review Board meeting in December 1980. The caseworker talked to appellant by telephone on January 15, 1981 and appellant said she had not called prior to that time because she wanted to see her attorney first.

With regard to visits between January 1, 1980 and the time of the hearing (August 1981) the worker testified:

"A. One actual visit.

"Q. When did that occur?

"A. That was on I believe May 3rd, May 3, 1981."

However, the worker also testified:

"Q. ... Through the first part of 1980 there were 1, 2, 3, 4, 5 visits between this woman and her children; is that correct?

"A. According to the record there were five visits."

Since January 1980, appellant had sent five or six letters to the children.

On May 5, 1981, the appellant visited with the children for approximately two hours. After this visit, at which appellant was intoxicated, the caseworker "outline[d] that [appellant] follow the contract agreement in order to have the visits." At the time of the hearing, the caseworker had had no further contact with appellant.

The trial court never made a finding of fact or conclusion of law to the effect that the children were abandoned by appellant, even though it expressly stated that the *fathers* "have abandoned the children and have made no effort to maintain a parental relationship with either of the children." The trial court's only relevant finding of fact as to appellant was:

"The children were declared wards of the Court [in] December of 1979, this for the second time. The respondent mother visited with the children on five occasions during the latter part of 1979, and visited with the children in May 1980 and May 1981. The total support provided by the respondent mother during the period from the time of their dependency to the date of the hearing has been the total sum of approximately $15.00. There have been five or six letters written by the respondent mother to the children during this period care of the Department of Economic Security."

No one disputes but that there is substantial evidence to support this finding of fact, but the finding does not relate these facts to the elements of abandonment. The court also found (although labeled as conclusions of law):

"3. That in the opinion of the Court, the evidence indicates that the respondent mother ... *has made only token efforts* to maintain parental relationship, support and communicate with either of the children.

"4. That it is in the best interest of the children that severance be granted as to the respondent mother...." (Emphasis added).

As we have said, a finding of "token efforts" standing alone does not support an order terminating parental rights, and although the interests of the children may certainly be considered, they may not be the sole basis for termination. *In the Matter of the Appeal in Pima County, Juvenile Action No. S-624, supra; In the Matter of the Appeal in Maricopa County, Juvenile Action Nos. A-23498 and JS-2201*, 120 Ariz. 82, 584 P.2d 63 (App.1978). Thus, we conclude that the trial court's findings are insufficient to support an order terminating appellant's parental rights. Nonetheless, "we must look to the facts in each case to determine if they support the order." *In the Matter of the Appeal in Maricopa County Juvenile Action Nos. JS-1308 and JS-1412*, 27 Ariz. App. 420, 422, 555 P.2d 679, 681 (1976); *see*

*generally Neal v. Neal*, 116 Ariz. 590, 570 P.2d 758 (1977) (on appeal, the court will assume that the trial court found every fact necessary to support its judgment and must affirm if any reasonable construction of the evidence justifies the decision).

In this case, the evidence could not support a finding of abandonment even if all conflicts in the caseworker's testimony were to be resolved against appellant. Viewed in that manner, the evidence still shows a mother who attended Foster Care Review Board meetings concerning her children, contacted the caseworker and visited the children sporadically while sending letters to them on occasion. We are compelled to hold that this is not sufficient evidence of intentional conduct which shows that appellant's purpose was to forego her parental responsibilities and relinquish her claim to the children.

We find the facts of this case substantially different from those of *In the Matter of the Appeal in Pima County, Juvenile Action No. S-139, supra* (after the birth of the child, the father made no efforts to ascertain the whereabouts of the child or to offer support); *Anonymous v. Anonymous, supra* (the mother left the state and kept her whereabouts a secret from the child and his custodial parent even after her return); and *In the Matter of the Appeal in Pima County, Severance Action No. S-110*, 27 Ariz.App. 553, 556 P.2d 1156 (1976) (appellant had not communicated with the child for a period of six months on several occasions; after her first release from jail she did not visit the children for nearly three years; she refused a psychological examination; and while the child was in Tucson, appellant refused to drive there from Phoenix for visits).

We are troubled by the practical effect of our decision. These two children and their foster parents or prospective adoptive parents are now back in the same position they were in months ago and further delays in stabilizing the lives of these children can be expected whether or not another severance

petition is filed by the Department of Economic Security. Nonetheless, these concerns cannot overshadow appellant's parental rights. We note, however, that much of the instability in the children's lives could have been prevented if the Department of Economic Security had filed the severance petition only when it was prepared to present sufficient evidence upon which the trial court could properly find abandonment.

The trial court's order terminating the parent-child relationship as to the appellant is reversed.

EUBANK, P. J., and CONTRERAS, J., concur.