653 P.2d 55

**In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. JS–4283.**

**No. 1 CA–JUV 171.**

Court of Appeals of Arizona, Division 1, Department C.

Oct. 19, 1982.

Smith, Howard & Deroon by Richard R. Seyffer, Phoenix, for appellant.

Robert K. Corbin, Atty. Gen. by C. Eileen Bond, Asst. Atty. Gen., Phoenix, for appellee, Ariz. Dept. of Economic Sec.

Robert G. Robinson, Glendale, for minor children.

## OPINION

BROOKS, Judge.

This is an appeal from a juvenile court order which severed the parental rights between appellant and her two minor children. The termination order was based upon the trial court's finding that appellant, the natural mother, had abandoned her children and had made no effort to maintain a parental relationship with the children in accordance with A.R.S. § 8–533(B)(1).

On appeal, the mother argues that the statutory ground of abandonment was not satisfied where she consistently asked for the return of her children and where the finding of abandonment was based upon her refusal to submit to the terms of the integration plan designed to return the children from a foster home to her custody. She also contends that the trial court erred in admitting, over objection, a previously dismissed dependency petition together with various reports and photographs relating to that petition. Finally, she argues that the trial court's order of termination was not supported by the evidence.

Extensive findings of fact were entered by the trial court which, with some amplification from the record, succinctly frame the issues on appeal. They reflect that appellant is Korean and was living in Korea when she married an American serviceman and bore their first child, a daughter, on December 6, 1973. They moved to Glendale, Arizona, where their son was born on December 29, 1975. Marital difficulties ensued and they were divorced in 1977.

On January 28, 1977, a dependency petition was filed as to the daughter based upon an alleged incident where the mother beat the daughter with a wooden toy. On May 2, 1977, the child was found to be dependent, was made a ward of the court and was committed to the care, custody and control of the Arizona Department of Economic Security. In January of 1978, the daughter was returned to appellant and on July 24, 1978, the petition was dismissed with home monitoring to be conducted by the Department of Economic Security.

On April 3, 1979, a dependency petition was filed as to each of the children alleging emotional difficulties of the mother which constituted risks to the children. On November 8, 1979, the children were made wards of the court and were placed in the care, custody and control of the Department of Economic Security which then placed them in a licensed foster home.

When the children were taken from the mother in April, 1979, they had to be removed by the police who were held off by the mother armed with a hatchet and knives, for more than an hour. As a result of this incident, the mother was placed on probation but her probation was revoked and she was incarcerated from approximately December, 1979 until December, 1980. During that period, she was given psychiatric evaluations which, as described by the trial court, varied in diagnosis from "adjustment to adult reaction" to "full

blown psychosis." Finally, she was given medication which produced a dramatic positive effect in her mental condition and led to her release from the Maricopa County Hospital. During this time, however, she had developed a deep distrust of psychologists, psychiatrists and social workers which, with limited exceptions, led to a total refusal to see them or cooperate with them during 1980 and early 1981 in their attempt to make evaluations of her ability to be reunited with her children. In January, 1981, appellant was evaluated by Dr. Bencomo, a psychiatrist, who found that she suffered no mental disorder or emotional disturbance which would impair her ability to parent two normal children. Dr. Bencomo advised her to cooperate with the Department of Economic Security caseworkers in a plan for returning the children.

The psychologist who had evaluated the children found that the daughter's personality was "fragile" based, in large part, upon a significant fear of her mother, and that the son did not remember his mother. A reintegration plan was developed in March of 1981 between the caseworkers, the children's psychologist and the attorney for the Department of Economic Security. This plan was designed as a "minimal plan" to protect the children from eminent psychological harm which would be caused by merely thrusting them back into their mother's custody without safeguards. The plan consisted of the following requirements:

1. The mother was to visit the children before their return on as many occasions as necessary to reacquaint the parties and ease the daughter's fears;
2. The mother was to meet with a caseworker and the children's therapist prior to the return of the children to discuss and orient her to the children's present status and needs;
3. The mother was to involve herself and the children with the children's therapist after their return so as to ease and monitor reorientation;
4. There was to be regular, in-home monitoring by the caseworker after the children's return;

5. There was to be regular contact between the mother and a member of her choosing of the Korean community to alleviate isolation and provide support; and
6. The natural mother was to provide a home and support for the children.

This plan was communicated to the mother through her attorney and a conference was arranged for May 5, 1981 in order that the trial court could explain the plan. The conference was held but the mother refused to submit to the plan and demanded the immediate and unconditional return of her children. She had not seen the children since March, 1980 and had made no attempts whatsoever to make contact with them.

Based upon the mother's refusal to cooperate, the Department of Economic Security filed a petition to terminate her parental rights, alleging abandonment and failure to maintain a parental relationship with the children. A three day hearing was held on the petition at which time evidence supporting the above facts was presented. The court concluded that the allegations of the petition were satisfied and terminated the parental relationship pursuant to A.R.S. § 8–533(B)(1) by order dated November 9, 1981 and this appeal followed.

Appellant's first argument is that the trial court could not find abandonment based upon the mother's mere refusal to acquiesce in the plan prepared by the Department of Economic Security. She claims that because she attended all court hearings and consistently asked for the return of her children, the requisite showing of an intentional relinquishment of her parental claims or a conscious disregard of the obligations owed by a parent to a child were not established. Under the facts of this case, we disagree.

■ Unquestionably, parents have a fundamental liberty interest in the care, custody and management of their children. *Santosky v. Kramer*, —— U.S. ——, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). However, this right is not absolute and, where the welfare of a child is seriously jeopardized, the state

must act on behalf of the child. *In the Matter of the Appeal in Cochise County Juvenile Action No. 5666–J,* 133 Ariz. 157, 650 P.2d 459 (1982).

A.R.S. § 8–533 establishes the grounds for termination of parental rights in Arizona. Included in the grounds for termination is evidence that the parent has abandoned the child or that the parent has made no effort to maintain a parental relationship with the child.[1] "Abandoned" is defined in A.R.S. § 8–201(1) as "the failure of the parent to provide reasonable support and to maintain regular contact with the child, including the providing of normal supervision." The definition goes on to state that "[f]ailure to maintain a normal parental relationship with the child without just cause for a period of six months shall constitute prima facie evidence of abandonment."

■ Terms such as "reasonable support" and "normal parental relationship" are of necessity imprecise and the concept of "abandonment" has been judicially recognized to be somewhat elastic. Ultimately, questions of abandonment and intent are questions of fact for resolution by the trial court. *Anonymous v. Anonymous,* 25 Ariz. App. 10, 540 P.2d 741 (1975). The gravaman of the statute is whether the evidence shows "intentional conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." 25 Ariz. App. at 12, 540 P.2d at 743; *accord, In the Matter of the Appeal in Pima County, Juvenile Action No. S–139,* 27 Ariz.App. 424, 555 P.2d 892 (1976); *Matter of Appeal in Maricopa County, Juvenile Action No. JS–4130,* 132 Ariz. 486, 647 P.2d 184 (App.1982).

■ Here, although appellant expressed a subjective desire for the return of her children, she refused for a period of more than six months to have any contact with the children or to cooperate in any way with the children's psychologist or the social worker in protecting the mental health of the children during the attempted reintegration process. While the Department of Economic Security had the responsibility to make all reasonable efforts to preserve the family relationship, *Arizona State Department of Economic Security v. Mahoney,* 24 Ariz.App. 534, 540 P.2d 153 (1975), its responsibility was not without limits and at some point the mother was required to make a good faith effort to reunite the family. *In the Matter of the Appeal in Pima County, Severance Action No. S–110,* 27 Ariz.App. 553, 556 P.2d 1156 (1976). Both the children's psychologist and the mother's psychiatrist testified that the plan was the *minimal* state involvement necessary for the mental well-being of the children. This was not a case of potential future harm to healthy children. Rather, the involved children's mental health was in eminent danger if returned without controls. *See In the Matter of the Appeal in Cochise County Juvenile Action No. 5666–J, supra.* As was stated in *Hernandez v. State ex rel. Arizona Department of Economic Security,* 23 Ariz.App. 32, 36, 530 P.2d 389, 393 (1975):

> In some cases there comes a time when failure to restore the parent-child relationship has to be recognized and it is in the best interest of the child to terminate this relationship and give the child the opportunity to be nurtured in the warmth and security of a loving home.

The trial judge found that the state's plan was necessary, that the mother refused to

---

1. A.R.S. § 8–533(B)(1) states:

Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following, and in considering any of the following grounds, the court may also consider the needs of the child:

1. That the parent has abandoned the child or that the parent has made no effort to maintain a parental relationship with the child. It shall be presumed the parent intends to abandon the child if the child has been left without any provision for support and without any communication from such parent for a period of six months or longer. If in the opinion of the court the evidence indicates that such parent has made only token efforts to support or communicate with the child, the court may declare the child abandoned by such parent.

cooperate and that severance was compelled. We agree that the mother's conduct constituted abandonment. In this regard, the trial judge stated:

> There is no question in the Court's mind that the mother will stubbornly refuse to agree to any of these terms and will do so for the indefinite future. Consequently, the children will have to remain in foster care literally until they are 18 because of her stubbornness. This simply is not in the best interest of the children . . . .

■ Appellant's second argument is that the trial court erred in admitting into evidence a prior dismissed dependency petition together with various reports and photographs. As indicated by appellee, however, the only report admitted into evidence to which the mother objected was Exhibit 1, the report of Dr. Allen, the children's psychologist. Foundation for this exhibit as required by Rule 703, Rules of Evidence, was supplied by Dr. Allen, who testified at the hearing and was cross-examined extensively by appellant's counsel. The only other objection was to photographs of the daughter taken in January, 1977. The caseworker who was present when the photographs were taken testified at the hearing, identified the photographs, and stated that they fairly depicted the child as she appeared on that day. The photographs were clearly relevant to Dr. Allen's testimony of the daughter's fear of her mother and the ultimate need for a reintegration plan.

■ Finally, appellant argues that there was not clear and convincing evidence of abandonment in that neither the court nor the children's psychologist adequately considered the cultural background of the mother and the children and the mother's ability to understand the plan.

Although *Santosky v. Kramer, supra,* had not been decided at the time the trial court issued its ruling, the trial court specifically stated that it based its finding on clear and convincing evidence. This court will uphold the trial court's finding in termination cases unless clearly erroneous. *Matter of Juvenile No. J–2255,* 126 Ariz. 144, 613 P.2d 304 (App.1980). Here, Dr. Allen was extensively cross-examined as to the cultural background of the children and the mother and concluded that the cultural factors did not alter his conclusion. There was an interpreter present for the mother, she was represented by counsel, and the trial court made every reasonable effort to insure the mother's understanding of the proceedings. We have reviewed the record and find that the evidence supports the trial court's findings.

Affirmed.

JACOBSON, P.J., and CONTRERAS, J., concur.