881 P.2d 361

### In the Matter of the Appeal in PIMA COUNTY JUVENILE SEVERANCE ACTION NO. S–114487.

### No. 2 CA–JV 93–0008.

Court of Appeals of Arizona, Division 2, Department A.

July 27, 1993.

Review Granted Dec. 15, 1993.*

---

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

**30**

Amy Z. Hubbell and Streich Lang, P.A. by Robert E. Miles and Dianne C. Kerns, Tucson, for minor.

Peter W. Hochuli, Tucson, for father.

Pima County Attorney's Office, Div. of Child Advocacy by David M. Quantz, Tucson, amicus curiae.

## OPINION

LACAGNINA, Judge.

In this appeal, the child challenges the juvenile court's order denying the petition to terminate the parental rights of the child's putative father. The Division of Child Advocacy of the Pima County Attorney's Office has been granted leave to file an amicus brief supporting the child's position. For the reasons stated below, we affirm.

The mother and the father were dating in high school in Texas when the mother became pregnant. The mother was 17 years of age when she gave birth to the child in October 1991 in Arizona, having been sent here from Texas by her father to live with an aunt. It is not disputed that the father is, in fact, the child's biological father, although in its order denying the severance petition alleging that the father abandoned the child, the juvenile court ordered the father to establish paternity. The mother relinquished her parental rights and the child was placed with prospective adoptive parents with whom she has lived since immediately after birth. The severance petition was filed in April 1992, alleging only abandonment as a ground for termination of the father's rights.

Following a contested severance hearing, the juvenile court made the following findings:

> ... the Court finds that the Petition for Termination of Parental Rights was not proven by a standard of clear and convincing evidence.
>
> In order to find abandonment, the Court must determine that the parent has evinced "a settled purpose to forego all parental duties and relinquish all parental claims to the child." *Matter of Juv. Action No. JS–500274,* [167 Ariz. 1, 3,] 804 P.2d 730 (1990) at 733. In this case, that purpose cannot be found. Instead, what are found are the efforts of a teen parent to maintain his relationship with the mother of the child and to build a future for all of them. While these efforts may seem insignificant at first glance, when his age and social circumstances are considered, they certainly overcome any claim of abandonment.

The father and mother communicated regularly when she was sent to Arizona by her disgruntled father to have the baby and live with her aunt. They had become engaged and planned to marry after the birth. He fully expected her to return to Texas with the child. He named the baby and had amassed a considerable store of baby equipment in anticipation of her return.

News of the relinquishment came to the father by a message on the telephone answering machine. When the mother returned to Texas, she told him there was nothing he could do, that the baby was placed for adoption. He made contact with a Texas attorney who advised him to contact an Arizona lawyer. The father had no idea of how to do that. In the meantime, a letter from the mother's attorney for the relinquishment arrived accompanied by a Consent to Adopt for the father to sign. After phone calls to that attorney and the attorney for the adoptive parents, the father decided to contest the severance and so wrote the court in time for the Initial Severance hearing on June 4, 1992.

All of the events described took place in the time period between August, 1991, and May, 1992. The baby was born on October 24, 1991. The father has never had the opportunity to see his child and has not had information about her location.

The court denied the petition, but found that removal of the child from her current placement would not be in her best interests and, finding her dependent, continued placement with the prospective adoptive parents, granting legal custody to the Arizona Department of Economic Security (Child Protective Services).

█ The child argues that the juvenile court utilized an incorrect standard for determining whether the father abandoned her, erroneously failing to apply the definition set forth in A.R.S. § 8–546(A)(1). That provision defines "abandoned" as

> the failure of the parent to provide reasonable support and to maintain regular contact with the child, including the providing

of normal supervision, when such failure is accompanied by an intention on the part of the parent to permit such condition to continue for an indefinite period in the future. Failure to maintain a normal parental relationship with the child without just cause for a period of six months shall constitute prima facie evidence of abandonment.

We question whether this definition is applicable to severance proceedings. *But see, Maricopa County Juvenile Action No. JS–500274,* 167 Ariz. 1, 4, 804 P.2d 730, 733 (1990). The definition appears under Chapter 5, Article 3 of Title 8 which relates to "Protective Services." Section 8–546(A) specifies that the definitions set forth thereunder apply to that "chapter." Because Article 2 of Chapter 5 (pertaining to severance proceedings) has its own definitions section, § 8–531, we conclude that the legislature did not intend that the § 8–546 definitions be applied in severance cases,[1] even though the term is not defined in § 8–531.

The legislative history of these provisions supports our conclusion. A.R.S. §§ 8–531, 8–533 and other provisions relating to severance proceedings were proposed during the 1970 legislative session in House Bill 13. What is now § 8–546 and other provisions relating to child protective services were proposed during that same session in House Bill 37. At the time, § 8–546 was even numbered as § 8–531, part of the newly-created Article 2, but was later renumbered. The definitions set forth in the latter bill were clearly intended to apply only to those provisions being proposed in that bill. Perhaps more important, however, is the fact that at that time, § 8–533 contained its own, slightly different definition of abandonment for severance purposes including a presumption that the parent intended to abandon the child "if the child has been left without any provision for his support and without communication from such parent for a period of six months or longer." Laws 1970, Chapter 153. This portion of the statute remained until the statute was amended, repealed and then re-enacted. Laws 1983, Chapter 176, §§ 1

---

1. The same definition appears in § 8–201(1). However, that section is in an entirely different chapter (chapter 2) and the statute confines the definitions to that chapter.

through 3; Laws 1986, Chapter 205. Since 1986, abandonment has been merely stated as a ground for severance. It is not defined in §§ 8–533 or 8–531, nor is there a provision in Article 2 creating a statutory presumption of abandonment.

■ We, therefore, look to case law for a definition of abandonment for severance purposes, rejecting the child's contention that the juvenile court erred in failing to refer to the definition of abandonment in A.R.S. § 8–546.[2] The juvenile court relied on *Maricopa County Juvenile Action No. JS–500274, supra,* and what the minor has referred to as the "settled purpose" standard, that is, whether there has been intentional conduct on the part of the parent "which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." *Anonymous v. Anonymous,* 25 Ariz. App. 10, 12, 540 P.2d 741, 743 (1975). The child contends that the "settled purpose" standard has never been adopted in this state and is mere dicta in the cases in which it has been cited. She argues that the correct test is that set forth in this court's decision in *Anonymous v. Anonymous:* "whether there has been conduct on the part of the parent which implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship." 25 Ariz.App. at 12, 540 P.2d at 743.

The child has taken the quoted portion of *Anonymous v. Anonymous* out of context. A careful reading of that decision reveals that after pointing out that the settled purpose standard had been adopted in the majority of jurisdictions, we used the "conscious disregard" language in emphasizing that the parent's conduct must be intentional. We did not reject the "settled purpose" standard; we adopted it. It has since been utilized in numerous cases. *See, e.g., Maricopa County Juvenile Action No. JS–500274, supra; Pima County Juvenile Action No. S–1607,* 147 Ariz. 237, 709 P.2d 871 (1985); *Maricopa*

*County Juvenile Action No. JS–4283,* 133 Ariz. 598, 653 P.2d 55 (App.1982).

The child also argues that the "settled purpose" standard is faulty because it disregards the best interests of the child. The child claims this is unfair, particularly in light of decisions of the United States Supreme Court discussing the minimal rights of the biological parent of an "illegitimate" child. *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978). In a related argument, the Pima County Attorney argues in its amicus brief that because the standard employed ignores the best interests of the child, it is unconstitutional as applied, depriving the child of a liberty interest protected by the due process clause of United States and Arizona Constitutions, the right to continue the bonds developed with the adoptive parents.

■ We are unpersuaded by these arguments. Parents have a fundamental liberty interest in the care, custody and management of their children. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The grounds for severance set forth under A.R.S. § 8–533 and the burden of proof (clear and convincing evidence), were designed to strike a balance between the parents' rights and the state's interest in protecting children. *See* Historical Note to A.R.S. § 8–531. The standard employed in determining whether abandonment has been established does nothing to change this. Nor should the balance be adjusted in a severance proceeding where the parents of the child are not married. In this state, the law no longer recognizes the concept of illegitimacy. "Every child is the legitimate child of its natural parents...." A.R.S. § 8–601. Moreover, the severance statute does not distinguish between married and unmarried parents, defining parent only as "the natural or adoptive mother or father of a child." A.R.S. § 8–531(10). In addition, even assuming that a

---

2. We note, however, that in *Maricopa County Juvenile Action No. JS–500274, supra,* our supreme court used a definition based on a combination of § 8–546(A)(1) and case law. In that case, however, the definition of abandonment was not at issue. Were we to do so here the

result would be no different since the case law definition is similar to and an embellishment of that statutory definition. We do not believe, as the child contends, that the statutory standard imposes a lesser burden of proof.

child has a liberty interest in continuing the bonds with an adoptive family, the same argument could be made with respect to the child's right to be with a biological parent, particularly one who has not engaged in conduct justifying severance.

█ Neither *Lehr* nor *Quilloin* justifies a different result. In neither case did the Supreme Court hold that a child has a liberty interest in the bonds established with an adoptive family or that the child's best interests warrant constitutional protection. Rather, the Court essentially concluded that the rights of a father of a child born out of wedlock were not violated by statutory schemes that penalized his failure to assert them in prescribed ways.

█ Our supreme court has stated that the best interests of the child alone may not be a ground for severance. *Maricopa County Juvenile Action No. JS–500274, supra.* Where a statutory ground for severance has been established, the juvenile court must consider whether it is in the child's best interest to sever and, if not, then the court may decline to grant a severance petition. *Id.* However, where a statutory ground has *not* been established, the court may not sever even though termination of the relationship clearly is in the child's best interests. Moreover, both the child and the County have misstated the court's finding with respect to the best interests of the child. The court did not find that *severance* was in the child's best interests; the court found that removal of the child from her placement with the adoptive parents was not in her best interests. For that very reason, the juvenile court found the child to be dependent pursuant to A.R.S. § 8–538(D), ordering that she remain with the adoptive parents and that the Department of Economic Security develop an appropriate case plan. While we readily acknowledge the hardship that may result, the child has not been deprived of any constitutionally or statutorily protected right.

█ The child contends that, even assuming the court employed the correct standard, the evidence does not support the findings upon which the denial of the petition is based. We will not disturb the juvenile court's order unless the findings upon which it is based are clearly erroneous. *Maricopa County Juvenile Action No. JS–4374,* 137 Ariz. 19, 667 P.2d 1345 (App.1983), *modified on other grounds,* 163 Ariz. 153, 786 P.2d 1004 (App.1989). The findings need only be supported by reasonable evidence. *Maricopa County Juvenile Action No. A–25525,* 136 Ariz. 528, 667 P.2d 228 (App.1983). As the fact-finder, it was for the juvenile court to assess the credibility of the witnesses. *See Anonymous v. Anonymous, supra.* Here, the court clearly found the father to be quite credible. So viewed, his testimony and the rest of the record do provide reasonable evidence supporting those findings that are material.

We agree with the child that the court's finding that the father had no information about the child's location is inaccurate. The father had received the letter from the mother's attorney and could have found out more about the child's whereabouts by contacting him. Additionally, the father's mother had spoken to counsel for the adoptive parents. This does not, however, necessitate reversal in light of the evidence that the father at first believed that there was nothing he could do to stop the adoption, having been told that by the mother. The record also shows that although the father and his parents did not know how to contest the adoption, they did contact a lawyer in Texas and, later, a number of Arizona attorneys. They also tried to obtain the birth certificate, apparently believing that it would be significant if the father's name were on it. Additionally, the father accumulated funds for the support of the child, furniture, clothing and other supplies, in anticipation of the child's homecoming.

When the father was served with the severance petition, he wrote to the court in May 1992, stating clearly that he contested the severance. Although the father could have made additional efforts in the interim, such as contacting the mother's lawyer instead of simply disregarding the request that he sign the consent to adopt, given his explanations for his failure to act, we have no basis for interfering with the juvenile court's conclusion that the child did not establish by clear and convincing evidence that the father abandoned her.

Relying on A.R.S. § 8–546(A)(1), the child also argues that the court erred because it either "disregarded" the prima facie evidence of abandonment or found there was just cause for the father's failure to maintain the relationship. As discussed above, we do not believe that this provision applies to severance proceedings. We note, too, that the child also relies on *Maricopa County Juvenile Action No. JS–1363*, 115 Ariz. 600, 566 P.2d 1346 (App.1977). At the time that case was decided, there was a statutory presumption of abandonment. Even assuming the applicability of § 8–546(A)(1), we presume the court made every finding necessary to support its judgment. *Pima County Juvenile Action S–1607, supra.* At the very least, sufficient evidence was presented to support a finding of just cause. The mother left the state to have the baby, told the father immediately after the birth not to come to Arizona because of problems with her family, initially led the father to believe she was bringing the child back with her, and later told him the child was placed in an adoptive home. We have already reviewed the other efforts the father made to make his position regarding the adoption known. We find no error.

The juvenile court's order denying the severance petition is affirmed.

LIVERMORE, P.J., and FERNANDEZ, J., concur.