NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HARMONY F., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.F., J.F., L.F., *Appellees*.

No. 1 CA-JV 19-0283
FILED 5-28-2020

Appeal from the Superior Court in Mohave County
No. L8015JD201707038
The Honorable Steven C. Moss, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Thomas Jose
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge David B. Gass joined.

---

**W I N T H R O P**, Judge:

¶1 Harmony F. ("Mother") appeals the juvenile court order terminating her parental rights to her three minor children, J.F., J.V.F., and L.F. Mother argues she received ineffective assistance from her trial counsel. She also argues the Arizona Department of Child Safety (the "Department") failed to meet its burden of proof as to grounds for termination and the juvenile court erred in finding termination to be in the best interests of the children. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Mother is the biological mother of J.F., born in December 2006, J.V.F., born in January 2008, and L.F., born in September 2010. Each of the children have different biological fathers.[1]

¶3 In September 2017, J.F. and L.F. were playing outside unsupervised when they found gasoline and set a basketball on fire, causing serious burns to J.F.'s hand. Although Mother heard screams, she did not investigate, and the children called 9-1-1. That same month, the Department received a report about this injury and another report describing domestic violence between Mother and her boyfriend, drug use in the home, and the family's impending eviction.

¶4 After the family was evicted, the Department attempted to engage the family in services, including housing assistance and behavioral health services. In December, however, a school nurse informed the Department that L.F. came to school with a fever and the school was unable to contact Mother. L.F. said the children had slept in the family's truck's bed under a camper shell the previous night. J.F. and J.V.F. reported the

---

[1] The juvenile court order also terminated the parent-child relationships between J.V.F. and L.F. and their respective fathers. These individuals are not parties to this appeal.

same and explained the children slept in the bed of the truck, sharing a single blanket. J.V.F. said he used one of the family's dogs as a pillow. The children reported they had slept in the truck's bed for three nights while Mother and her boyfriend slept in the truck's cabin or in a nearby storage unit. All of the children were sick but had not seen a doctor or received medication. J.V.F. said he had been sick for nearly three weeks. The Department removed the children from Mother's care.[2]

¶5 The Department petitioned for dependency, alleging the children were dependent on the grounds of neglect and substance abuse. In May 2018, the juvenile court found the children dependent as to Mother on each ground.

¶6 As part of a family reunification plan, the Department offered Mother numerous services, including services for substance abuse, mental health, and parenting skills. Mother made little progress in services until late 2018 and then engaged inconsistently. She submitted to substance-abuse testing, and tested positive for amphetamines once in January 2019 and again the following month. Mother also submitted several diluted urine samples.

¶7 Meanwhile, the Department determined that the children needed to be in separate placements and required individual counseling to address their behavioral issues and developmental delays. The Department located J.F.'s biological father, who reported Mother had prevented him from being a part of J.F.'s life. J.F. and his father began developing a relationship, and the Department submitted an Interstate Compact on the Placement of Children request to Oregon, where J.F.'s father resides, to facilitate J.F.'s placement with his father.

¶8 In March 2019, the Department moved to terminate Mother's parental rights to the children, alleging neglect and an inability to discharge parental responsibilities because of chronic substance abuse. The Department amended its motion to include an allegation of fifteen months' time-in-care. Following a trial at which Mother testified, the juvenile court granted the motion and terminated Mother's parental rights as to all three children. Mother timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A) and 12-2101(A)(1).

---

[2] Mother subsequently pled guilty to imperiling a minor by neglect, a Class 1 misdemeanor.

**ANALYSIS**

*I.     Ineffective Assistance of Counsel*

**¶9**        Mother argues her trial counsel provided ineffective assistance by failing to submit certain visitation records as evidence. The "ultimate focus of [appellate court inquiry in a parental rights termination case] must be on the fundamental fairness of the proceeding" giving rise to the challenged ruling. *John M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 320, 324, ¶ 14 (App. 2007) (quoting *Strickland v. Washington*, 466 U.S. 668, 696 (1984)). We need not resolve the issue of whether ineffective assistance of counsel review is applicable in civil dependency/termination proceedings, but note that, as it relates to the "fundamental fairness" standard, we will not reverse a termination order for alleged errors of counsel unless "at a minimum" Mother demonstrates those alleged errors undermine confidence in the proceeding's outcome and "give rise to a reasonable probability that, but for counsel's errors, the result would have been different." *John M.*, 217 Ariz. at 324-25, ¶¶ 14, 18.

**¶10**       According to Mother, these visitation records contained information that "could have been used to rebut the neglect and fifteen month[s] time in care grounds." We note, however, that the juvenile court found the State proved by clear and convincing evidence three separate grounds on which to terminate Mother's parental rights. Mother does not argue how the visitation records would rebut the substance-abuse ground; notably, the court found that Mother "is not credible at all in her testimony" about her substance abuse and testing. Further, given the significant evidence in the record that Mother "is not able to provide for the needs of these three children . . . who have unique and significant issues," there is no reasonable probability the additional documentation that Mother sometimes had provided food for her children and also had, at times, demonstrated appropriate parenting skills during supervised visitations would have changed the outcome of the proceeding.

**¶11**       In light of the record in this case, there is no basis to determine counsel's alleged error in not offering the visitation records caused the termination proceedings here to be fundamentally unfair so as to cause prejudice. *See John M.*, 217 Ariz. at 325, ¶ 18.

*II.     Termination of Parent-Child Relationship*

**¶12**       We review the juvenile court's decision to terminate parental rights for abuse of discretion, and we will affirm the decision if reasonable evidence supports the court's findings of fact. *E.R. v. Dep't of Child Safety*,

237 Ariz. 56, 58, ¶ 9 (App. 2015); *Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 440, ¶ 12 (App. 2014). We view the facts in the light most favorable to sustaining the juvenile court's order. *See Rocky J.*, 234 Ariz. at 440, ¶ 12. The juvenile court is uniquely positioned to resolve conflicts of evidence, so we do not reweigh evidence. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002) ("The juvenile court . . . is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings.").

### A.      Grounds for Termination

**¶13**       Mother argues the juvenile court erred in finding the State proved by clear and convincing evidence three separate grounds to terminate her parental rights: neglect, chronic substance abuse, and fifteen months' time-in-care. A.R.S. § 8-533(B)(2), (3), (8)(c). The juvenile court may terminate a parent's rights if it finds clear and convincing evidence of at least one statutory ground listed in A.R.S. § 8-533(B). *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 449, ¶ 12 (App. 2007). "If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds." *Jesus M.*, 203 Ariz. at 280, ¶ 3.

**¶14**       The parent-child relationship may be terminated if the juvenile court determines "the parent has neglected . . . a child." A.R.S. § 8-533(B)(2). "Neglect" is defined as "[t]he inability or unwillingness" of a parent to provide their child with "supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a). The juvenile court looks to the circumstances of the parent's conduct to determine whether that conduct reflects an "inability or unwillingness" to provide such necessities to their child so as to render the parent unfit. *Jade K. v. Loraine K.*, 240 Ariz. 414, 417-18, ¶¶ 12, 16 (App. 2016).

**¶15**       At trial, the Department case manager described how the Department became involved with Mother and the children in this case in late 2017. J.F., then twelve years old, sustained a second-degree burn after he and L.F., then seven years old, poured gasoline on a basketball and used a soldering torch to light it. The children were unsupervised as Mother was asleep at the time. The case manager also testified that a few months later, the Department sought removal of the children after receiving reports that the recently homeless family was sleeping in a truck, with the children sleeping in the bed of the truck with no heat, "one blanket to share amongst them," and with one child using a dog as a pillow. The children had been

sick for approximately three weeks, but Mother had not sought medical attention for them and had provided only "throat spray" instead of medication.

¶16      Significantly, the Department case manager testified that each of the children have special needs—two have developmental delays and the third has anger management and mood stabilization issues—and the children are "difficult to parent." The admitted evidence included a psychiatric report expressing concerns about Mother's inability to understand the need to supervise her children and lack of insight regarding appropriate supervision. Visitation records also reflect Mother's inability to consistently focus on her children or safely redirect them, requiring the case aide to intervene.

¶17      Mother argues that she remedied her lack of housing. But at the time of trial, Mother had only recently acquired employment and housing, a one-bedroom apartment on a month-to-month lease. The court found that these efforts amounted to only a "temporary resolution of this issue" and did not address the Department's concern that Mother should demonstrate an ability to provide appropriate, stable housing. On this record, sufficient evidence supports the court's finding that Mother's new employment and housing showed she "may be able to provide for her own needs at the present time" but not the needs of her children.

¶18      Next, Mother argues she demonstrated she improved her ability to parent and supervise her children. She cites her testimony that she took the children to the doctor and kept them current on their immunizations prior to this case. She also relies on visitation records showing she purchased meals for the children during some visits. The juvenile court found that Mother failed to provide individual counseling and appropriate medical care throughout their lives, and assessed Mother's testimony to the contrary as "nothing more than the mother's self-serving statement." Mother's arguments here essentially ask us to reweigh the evidence, which we will not do. *See Jesus M.*, 203 Ariz. at 282, ¶ 12; *Pima Cty. Juv. Action No. S-139*, 27 Ariz. App. 424, 427 (1976) ("We defer to the trial court's assessment of credibility of witnesses . . . .").

¶19      We find, on this record, reasonable evidence supports the juvenile court's findings. Thus, we find no abuse of discretion in the finding the State presented clear and convincing evidence that Mother neglected her three children pursuant to A.R.S. § 8-533(B)(2); accordingly, we need not address Mother's arguments as to the substance-abuse ground or fifteen months' time-in-care. *See Jesus M.*, 203 Ariz. at 280, ¶ 3.

B.     Best Interests

**¶20**        Upon finding the grounds to terminate a parent's rights have been established, the juvenile court must find by a preponderance of the evidence that termination is in the best interests of the children. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30 (App. 2010). "[T]ermination is in the child[ren]'s best interests if either: (1) the child[ren] will benefit from severance; or (2) the child[ren] will be harmed if severance is denied." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 13 (2018). A child may benefit from severance if the child is adoptable and if the current placement is meeting the child's needs. *Raymond F.*, 224 Ariz. at 379, ¶ 30; *see Alma S.*, 245 Ariz. at 150, ¶ 13. Termination may be in the children's best interests if the juvenile court finds "if the parental relationship continued, the [c]hildren would remain at significant risk for . . . neglect." *See Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 10 (App. 2016). "Courts must consider the totality of the circumstances existing at the time of the severance determination." *Alma S.*, 245 Ariz. at 150-51, ¶ 13.

**¶21**        Mother argues the juvenile court erred in finding termination is in the best interests of the children because the children are bonded with her and she is capable of parenting the children safely. At trial, the Department case manager acknowledged that the children have a strong bond with Mother. But the case manager testified that despite that bond, "there are also things that need to be provided from a mother to the children," including appropriate housing, financial stability, and structure.

**¶22**        As to J.V.F. and L.F., the juvenile court found that termination of Mother's parental rights was necessary to provide the stability in their lives that Mother is incapable of providing. J.V.F. was in a "potential adoptive home." L.F. was not in an adoptive placement, but the juvenile court found him "more likely than not" to be adoptable. As to J.F., the juvenile court found Mother detrimentally interfered with the child's relationship with his father and could not provide needed "stability and long-term care" for him. It also found that if the Department's plan to place J.F. with his father was unsuccessful, J.F. would be adoptable.

**¶23**        The evidence of J.V.F.'s and L.F.'s potential for adoption and the availability of parental placement for J.F., along with evidence that Mother cannot provide needed stability or structure for the children, is sufficient to sustain the juvenile court's decision that termination is in the best interests of the children.

**CONCLUSION**

**¶24**        For the foregoing reasons, we affirm the juvenile court's orders terminating Mother's parental rights to J.F., J.V.F., and L.F.



AMY M. WOOD • Clerk of the Court
FILED:    AA