NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

THERMOLIFE INTERNATIONAL, LLC,[1] *Plaintiff/Appellee/Cross-Appellant*,

*v.*

MUSCLEPHARM CORPORATION, *Defendant/Appellant/Cross-Appellee*.

No. 1 CA-CV 20-0209
FILED 4-27-2021

Appeal from the Superior Court in Maricopa County
No. CV2016-000113
The Honorable Roger E. Brodman, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Kercsmar & Feltus PLLC, Scottsdale
By Gregory B. Collins, Cara Molly Louise Rogers
*Counsel for Plaintiff/Appellee/Cross-Appellant*

Bonnett, Fairbourn, Friedman & Balint, P.C., Phoenix
By William F. King
*Co-Counsel for Defendant/Appellant/Cross-Appellee*

Kasowitz Benson Torres LLP, New York, NY
By Gavin D. Schryver *Pro Hac Vice*
*Co-Counsel for Defendant/Appellant/Cross-Appellee*

---

[1] This caption is amended as reflected. The amended caption shall be used on all further documents filed in this appeal.

---

## MEMORANDUM DECISION

Presiding Judge D. Steven Williams delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

**W I L L I A M S**, Judge:

¶1          MusclePharm Corporation appeals the superior court's grant of summary judgment to ThermoLife International, LLC, the denial of MusclePharm's motion to amend its counterclaim, a discovery ruling, and the court's award of damages and interest. For reasons that follow, we affirm all rulings except the interest award, which we vacate. We remand for entry of a revised judgment consistent with this decision.

### FACTUAL AND PROCEDURAL HISTORY

¶2          ThermoLife is the owner and seller of its patented nitrate compounds. MusclePharm is a performance lifestyle sports nutrition company that markets and sells sports-nutrition products, including dietary supplements, to retailers for resale to consumers.

¶3          In 2012, MusclePharm began negotiating to purchase nitrates from ThermoLife for use in MusclePharm's pre-existing nutritional supplement product called Assault ("the Product").

¶4          In 2013, MusclePharm released a version of the Product incorporating ThermoLife's nitrates. One week later, Peter Miller, the president and Chief Innovation Officer of MusclePharm's contract manufacturer, F.H.G. Corporation d/b/a Capstone Nutrition ("Capstone"), reported to MusclePharm that testing performed on the Product showed that the new version had more propensity to clump than the nitrate-free version of the Product. Miller also reported that he had asked ThermoLife's Chief Executive Officer, Ron Kramer, to add 1% silicon dioxide, an anti-caking agent, to the nitrates "to assist" in correcting the problem. Miller believes Kramer confirmed that ThermoLife would add 1% silicon dioxide to the nitrates, which ThermoLife disputes.

¶5          The month following release of the Product containing ThermoLife nitrates, MusclePharm began receiving customer complaints about clumping. A month later, Miller sent an email to MusclePharm

stating that he "may need to go ask [Kramer] for a credit" because "we all know its these nitrates causing the problems . . ."

¶6        Approximately two weeks later, MusclePharm executed its first Purchase and License Agreement with ThermoLife, which required MusclePharm to purchase a minimum amount of ThermoLife's patented nitrates for an initial term of one year. The agreement contained an exclusion-of-warranties provision.

¶7        During 2014, MusclePharm continued to receive customer complaints. In August 2014, MusclePharm asked Miller for "assistance" with the clumping complaints and asked Miller's team to "investigate." Miller emailed Kramer to advise about "more and more problems with [the Product] clumping and the nitrates as well," and asked him to "confirm the exact amount of silicon [dioxide] added," requesting the exact amount for "all lots" received the previous year. Kramer shared Miller's email with ThermoLife's nitrates supplier and asked the supplier for the statistics "on how much silicon[] dioxide was added to all shipments." The supplier responded that, "[I]n general, we add 0.5% [silicon dioxide]." Miller maintains that Kramer told him in a follow-up call that 1% silicon dioxide was being added to the nitrates.

¶8        The following year, MusclePharm entered into a second Purchase and License Agreement with ThermoLife, which required MusclePharm to purchase minimum quantities of nitrates from ThermoLife in 2015. The agreement again contained an exclusion-of-warranties provision.

¶9        MusclePharm continued to receive customer complaints about clumping. Sales of the Product declined. Thereafter, MusclePharm did not purchase the requisite minimum quantities of nitrates from ThermoLife in 2015 per the second agreement.

¶10        ThermoLife sued MusclePharm in 2016 for breach of contract. MusclePharm counterclaimed, alleging breach of warranty and unjust enrichment, and sought restitution. ThermoLife moved to dismiss the counterclaims. The superior court dismissed MusclePharm's unjust-enrichment claim, but denied the motion as to MusclePharm's breach-of-warranty claim.

¶11        ThermoLife filed its first motion for partial summary judgment on its affirmative claims and on MusclePharm's counterclaims. To avoid disclosing confidential business information, ThermoLife stipulated that the nitrates shipped to MusclePharm under its contracts

contained 0.05% silicon dioxide. MusclePharm moved for leave to amend its counterclaims to add claims for fraud and breach of the implied covenant of good faith and fair dealing. The superior court granted the motion in part, but precluded MusclePharm from seeking consequential or incidental damages. The court denied MusclePharm's motion to amend the complaint to assert a fraud claim, but permitted it to assert a claim for breach of the duty of good faith and fair dealing. MusclePharm amended its counterclaim, realleging its breach-of-warranty claim and alleging a breach of the duty of good faith and fair dealing.

¶12 ThermoLife filed a second motion for partial summary judgment on MusclePharm's counterclaims and its own breach-of-contract claim, for which MusclePharm raised the affirmative defense of material breach. The record before the superior court on the motion for summary judgment shows that MusclePharm's expert, Dr. Kantha Shelke, testified in her deposition that she did not know if adding 1% silicon dioxide would have been sufficient to prevent clumping. Dr. Shelke further testified that she could not state with any certainty what amount of silicon dioxide would have prevented the clumping issues with the Product.

¶13 As to MusclePharm's claim for breach of warranty, the court found MusclePharm could not prove causation and granted summary judgment to ThermoLife. As for ThermoLife's claim for breach of contract and MusclePharm's affirmative defense of material breach of contract, the court found that ThermoLife's alleged promise to include the 1% silicon dioxide was not an essential term of the contract and that the alleged failure to add that amount was not a material breach that would excuse MusclePharm's failure to perform. Thus, the superior court granted ThermoLife summary judgment, leaving only the issue of ThermoLife's damages.

¶14 MusclePharm claimed it discovered previously undisclosed information related to its clumping allegations and moved for sanctions against ThermoLife. The superior court denied the motion for sanctions. In its ruling, the court reasoned that, although ThermoLife had a duty to disclose the documents, the information "does not impact the reason why the Court granted ThermoLife's motion" for summary judgment because MusclePharm had "not presented any evidence that would allow a reasonable factfinder to conclude that the addition of 1% silicon dioxide to the nitrates probably would have avoided clumping in [the Product]."

¶15 After a bench trial on ThermoLife's damages, the court awarded ThermoLife damages and interest at the rate of 10% from January

1, 2016 until paid in full pursuant to a contractual provision for "unpaid amounts." The court awarded fees and entered final judgment.

**¶16** We have jurisdiction over MusclePharm's timely appeal under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1).[2]

## DISCUSSION

### I.      Motion for Summary Judgment

**¶17** We review de novo the grant of summary judgment to ThermoLife, viewing the evidence and reasonable inferences in the light most favorable to MusclePharm. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003). We will affirm summary judgment if there is no genuine issue of material fact and ThermoLife is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *see Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990).

#### A.      ThermoLife's Claim for Breach of Contract and MusclePharm's Material-Breach Defense

**¶18** MusclePharm argues the superior court erred in granting summary judgment to ThermoLife on its breach-of-contract claim and in rejecting MusclePharm's affirmative defense that ThermoLife materially breached the contract.

**¶19** A material breach occurs "when a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions," or fails to do something required by the contract that is so important to the contract that the breach defeats the very purpose of the contract. Rev. Ariz. Jury Instr. ("RAJI") (Civil) Contract 9 (5th ed. 2015) (citing Restatement (Second) of Contracts § 241 (1981)); *Ry-Tan Constr., Inc. v. Washington Elementary Sch. Dist. No. 6*, 208 Ariz. 379, 399–401, ¶¶ 73–76 (App. 2004), *vacated on other grounds by* 210 Ariz. 419 (2005). "A material breach by one party excuses performance by the other party to the contract." RAJI (Civil) Contract 9 (citing Restatement (Second) of Contracts § 241); *Zancanaro v. Cross*, 85 Ariz. 394, 400 (1959). In considering whether a breach is material, relevant factors to consider can include "the extent to which the injured party will be deprived of the benefit reasonably

---

[2] ThermoLife timely cross-appealed but did not submit a cross-opening brief. Thus, ThermoLife abandoned its cross-appeal.

expected."[3] RAJI (Civil) Contract 9 (citing Restatement (Second) of Contracts § 241); *see Maleki v. Desert Palms Pro. Props., L.L.C.*, 222 Ariz. 327, 332, ¶ 25 n.2 (App. 2009); *Found. Dev. Corp. v. Loehmann's, Inc.*, 163 Ariz. 438, 446 (1990). MusclePharm had the burden to prove material breach as an affirmative defense. *See Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 119, ¶ 27 (App. 2008) (proponent of affirmative defense has burden of proof) (as amended).

¶20        Here, to succeed on its affirmative defense of material breach, MusclePharm had to prove that the failure to add the allegedly promised 1% silicon dioxide to the nitrates defeated the very purpose of the contract. The purpose of the contracts was to supply nitrates for use in the Product. And nothing in the contract, including the warranty-exclusion provision, addresses clumping at all. Therefore, the failure to add the allegedly promised 1% silicon dioxide to the nitrates in an attempt to combat clumping could not defeat the stated contractual purpose of supplying nitrates.

¶21        MusclePharm also did not—and could not—prove that it was reasonable to expect that the addition of 1% silicon dioxide to the nitrates would prevent clumping in the Product. The superior court addressed this reasonable expectation factor in its ruling, but phrased it in terms of damages and harm, finding that "proof of injury/harm . . . is essential" and that "MusclePharm failed to present evidence indicating that 1% silicon dioxide probably would have prevented its product from clumping." Although expressed in terms of damages and harm, implicit in the court's reasoning is understanding that it was unreasonable for MusclePharm to expect that the addition of 1% silicon dioxide would prevent clumping. We agree. MusclePharm's own expert did not know if adding 1% silicon dioxide would prevent clumping and could not state with any certainty what amount would have prevented clumping. As ThermoLife argues, MusclePharm could not lose a purportedly expected benefit without a causal link between the breached promise and the harm suffered. *See Ramaiah v. Palombi Homes Co.*, 1 CA-CV 07-0600, 2008 WL 2102460, at *4, ¶ 18 (Ariz. App. May 15, 2008) (mem. decision). Because the failure to add 1% silicon dioxide alone is insufficient to demonstrate a material breach of the contract, we affirm summary judgment.

---

[3] There are other factors listed in § 241 of the Restatement (Second) of Contracts, but they are not relevant to the inquiry here.

### B.  MusclePharm's Counterclaim for Breach of Warranty and the Implied Covenant of Good Faith and Fair Dealing

**¶22**      MusclePharm also challenges the grant of summary judgment against it on its counterclaim for breach of warranty and breach of the implied covenant of good faith and fair dealing.

**¶23**      To succeed on its claim, MusclePharm had to prove that ThermoLife's alleged breach of warranty caused its damages. *See* Restatement (Second) of Contracts § 347(a)-(b) (1981) (providing that an injured party has a right to damages for losses "caused" by the breach); *Graham v. Asbury*, 112 Ariz. 184, 185 (1975) (breaching party is liable for any damages sustained "as a result" of the breach); *N. Ariz. Gas Serv., Inc. v. Petrolane Transp., Inc.*, 145 Ariz. 467, 478 (App. 1984); *Thunderbird Metallurgical, Inc. v. Ariz. Testing Lab'ys.*, 5 Ariz. App. 48, 50 (1967) (damages recoverable in a contract action are those "proximately caused by the breach").

**¶24**      MusclePharm alleged that ThermoLife warranted its nitrates contained 1% silicon dioxide, but supplied product that contained significantly less than 1% silicon dioxide, "which caused product-hardening and 'clumping' when incorporated into" the Product. Assuming the truth of the warranty to supply 1% silicon dioxide, the superior court found that MusclePharm's expert failed to establish that it was probable that a mixture with 1% silicon dioxide would prevent clumping. We agree with superior court that the expert's testimony did not establish causation.

**¶25**      MusclePharm argues that the superior court relied on the wrong causation standard and urges application of a different causation standard relying on tort cases. *See e.g., Thompson v. Sun City Cmty. Hosp., Inc.*, 141 Ariz. 597, 608 (1984) (applying an increased risk of harm causation standard); *Ontiveros v. Borak*, 136 Ariz. 500 (1983) (noting "there is liability if the result would not have occurred but for defendant's conduct, even if that conduct contributed only a little to plaintiff's injuries"); *Wisener v. State*, 123 Ariz. 148, 150 (1979) (applying a "substantial factor" causation standard); *A Tumbling-T Ranches v. Paloma Inv. Ltd. P'ship*, 197 Ariz. 545, 552, ¶ 25 (App. 2000) (noting "once a plaintiff proves that the defendants' conduct contributed to the plaintiff's damages, the burden of proof shifts to the defendants"); *Souza v. Fred Carries Conts., Inc.*, 191 Ariz. 247, 253 (App. 1997) (noting a proximate cause need contribute only slightly to the injury). We agree with the superior court that the appropriate standard in this contract case is a proximate causation standard. MusclePharm could not

prove that compliance with the allegedly breached term would have made a difference in the clumping problems with the Product. The sole issue regarding causation is what would have happened to the Product, with or without the addition of the 1% silicon dioxide. MusclePharm did not establish that even with the increased amount of silicon dioxide, the Product would not have clumped.

¶26        MusclePharm argues that a combination of Dr. Shelke's testimony, including that it was one hundred percent likely the nitrates would clump without the proper anti-caking agent, and circumstantial evidence, such as the absence of customer complaints before the addition of nitrates and presence of complaints afterwards, was sufficient to establish a disputed issue of fact as to causation. But none of the cited evidence, even in combination, was sufficient to raise a fact question regarding causation. Because MusclePharm could not prove that ThermoLife proximately caused its alleged damages, the superior court properly granted summary judgment to ThermoLife on MusclePharm's breach of warranty claim.

## II.    Denial of Motion to Amend to Add Fraud Claims

¶27        MusclePharm challenges the court's denial of its motion to amend the complaint to add a fraud claim. We review the denial of a motion to amend a complaint for abuse of discretion. *Swenson v. Cnty. of Pinal*, 243 Ariz. 122, 128, ¶ 21 (App. 2017). "A court does not abuse its discretion in denying a motion for leave to amend if the amendment would be futile." *ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 292, ¶ 26 (App. 2010).

¶28        After discovery closed, and after ThermoLife had filed its first motion for summary judgment, MusclePharm moved to amend the complaint to add a fraud claim. The superior court denied leave to amend on the basis of undue prejudice, the economic-loss rule, and futility. We agree the fraud claim would be futile. As discussed above, MusclePharm lacked any evidence to show that ThermoLife's alleged promise to include 1% silicon dioxide in the nitrates proximately caused MusclePharm harm. One of the nine elements of fraud is proximate injury, and MusclePharm could not link ThermoLife's nitrates to their declining sales. *Brown v. Karas*, 73 Ariz. 62, 67 (1951) (including proximate injury in the elements for fraud). Accordingly, MusclePharm lacked proof of an essential element of a fraud claim. Since MusclePharm could not prove fraud, allowing an amendment of the complaint to add a fraud claim would have been futile. *Id.*

### III.    Discovery Issue

¶29    MusclePharm argues the superior court erred in refusing to grant additional discovery based on ThermoLife's alleged disclosure violations. We review "discovery issues for [an] abuse of discretion." *Catrone v. Miles*, 215 Ariz. 446, 454, ¶ 23 (App. 2007).

¶30    MusclePharm claims that documents discovered on the eve of trial were relevant to establishing the importance of adding 1% silicon dioxide to ThermoLife's nitrates to combat clumping. The record shows that, after the parties stipulated to additional discovery and after the superior court granted MusclePharm leave to conduct supplemental discovery, MusclePharm's counsel stated vaguely at the oral argument on its sanctions motion a desire for additional discovery. The superior court did not address this oral request in its ruling on the motion for sanctions. The court found that the newly discovered documents did not impact the reason the court granted ThermoLife's motion for summary judgment. Thus, even assuming a proper discovery request, there was no need for the court to grant additional discovery on an irrelevant issue. MusclePharm has shown no error.[4]

### IV.    Damages & Interest

¶31    Following a bench trial, we view the facts in the light most favorable to upholding the superior court's ruling and review de novo any conclusions of law. *Federoff v. Pioneer Title & Tr. Co. of Ariz.*, 166 Ariz. 383, 388 (1990); *Bennett v. Baxter Grp., Inc.*, 223 Ariz. 414, 417, ¶¶ 2, 8 (App. 2010). We will uphold findings of fact made after a bench trial unless the findings "are clearly erroneous or unsupported by any credible evidence." *Federoff*, 166 Ariz. at 388. When interpreting statutes, "[i]f the statute is clear and unambiguous, we apply the plain meaning of the statute." *Hourani v. Benson Hosp.*, 211 Ariz. 427, 431, ¶ 7 (App. 2005).

#### A.    Damages

¶32    MusclePharm argues the superior court erred in awarding ThermoLife damages under A.R.S. § 47-2708(B) because that statute required ThermoLife to resell the Product to a different buyer to mitigate

---

[4] Because we affirm the superior court's summary judgment rulings, we do not address ThermoLife's alternative argument that the court erred in denying its first motion for summary judgment.

its damages and that the court erred in finding ThermoLife was a lost-volume seller so as to excuse the mitigation requirement.

¶33          Although the superior court briefly mentioned the lost-volume seller theory in its decision, the court did not find that ThermoLife was a lost-volume seller, nor did A.R.S. § 47-2708(B) require ThermoLife to attempt a resale. This statute, which ThermoLife agrees applies, provides that the measure of the seller's damages for non-acceptance or repudiation is the "profit . . . the seller would have made from full performance by the buyer . . . due credit for . . . proceeds of resale." A.R.S. § 47-2708(B). The plain language of A.R.S. § 47-2708(B) does not require a seller to resell a good to recover damages in the event of non-acceptance or repudiation. Instead, the statute requires a credit to the buyer *in the event* the seller resells the good. Here, MusclePharm did not order the requisite amount of nitrates so ThermoLife in turn did not order those from its supplier and had no nitrates to resell. Under A.R.S. § 47-2708(B), ThermoLife was entitled to damages that would put it in the position it would have been had the contract been performed. *See also A.R.A. Mfg. Co. v. Pierce*, 86 Ariz. 136, 141 (1959); Restatement (Second) of Contracts § 347(a)-(b); RAJI (Civil) Contract 17 (2013). MusclePharm does not otherwise challenge the court's damages calculations and we see no error.

### B.     Interest

¶34          MusclePharm argues the superior court erred in awarding ThermoLife 10% prejudgment interest under A.R.S. § 44-1201(D)(1) because its damages were not liquidated.

¶35          The superior court did not award MusclePharm prejudgment interest under A.R.S. § 44-1201. The court found that the 2015 contract provides that interest on "unpaid amounts" is due at 10% and then awarded 10% contractual interest beginning January 1, 2016 until paid in full. Contrary to the court's finding, the contract language provides that "all late payments" accrue 10% annual interest.

¶36          MusclePharm argues the late payment provision does not apply because ThermoLife never invoiced MusclePharm for unordered nitrates and did not sue for late payments. ThermoLife argues that because the court held MusclePharm breached the parties' agreement, the total amount of its damages became a "late payment" under the contract. It is undisputed that MusclePharm did not order the requisite nitrates and ThermoLife did not invoice MusclePharm for unordered goods. The failure

to order does not constitute a late payment. We vacate that portion of the judgment ordering 10% contractual interest beginning January 1, 2016 and remand to the superior court for a judgment consistent with this decision.

## CONCLUSION

**¶37**        For the foregoing reasons, we affirm the superior court's ruling on liability and damages. We vacate the interest ruling and remand for a revised judgment consistent with this decision. Both parties request attorney's fees and costs on appeal. As the net successful party on appeal, we award ThermoLife attorney's fees upon compliance with Arizona Rule of Civil Appellate Procedure 21. *Berry v. 352 E. Virginia, L.L.C.*, 228 Ariz. 9, 13–14, ¶¶ 22–24 (App. 2011). We award costs on appeal to MusclePharm in accordance with A.R.S. § 12-342(a).



AMY M. WOOD • Clerk of the Court
FILED:    AA