NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SUSETTE G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.G., J.G, *Appellees*.

No. 1 CA-JV 19-0309
FILED 2-25-2020

Appeal from the Superior Court in Maricopa County
No. JD531464
The Honorable Karen O'Connor, Judge (retired)

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Tom Jose
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Jennifer B. Campbell and Vice Chief Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

**¶1**         Susette G. ("Mother") appeals the juvenile court's order terminating her parental rights to her children, Adriel and Joseph. For the following reasons, we affirm.[1]

### FACTS AND PROCEDURAL BACKGROUND

**¶2**         In 2016, Mother gave birth to her first son Adriel, who was born exposed to marijuana. In 2017, while pregnant with her second son Joseph, Mother tested positive for marijuana and methamphetamine. Joseph was born, and the Department of Child Safety ("DCS") became concerned with Mother's substance abuse. DCS provided family preservation services while allowing the children to remain with Mother, who lived with her mother and grandmother, and put a safety plan in place. DCS eventually removed the children from Mother's care because Mother continued testing positive for substances and left one hour into a three-hour substance abuse group meeting—the only one she attended.

**¶3**         DCS petitioned the court to find the children dependent, citing its concerns over Mother's methamphetamine, marijuana, cocaine, and alcohol use. Mother also reported thoughts of suicide, self-harm, and stated that, although she had been diagnosed with bipolar disorder, she was not compliant with treatment. DCS placed the children with a family member, who was an adoptive placement, where they remained at the time of the termination trial. Mother failed to attend a pretrial conference in March 2018, and the court adjudicated the children dependent in her absence.

**¶4**         After removing the children from Mother, DCS referred Mother for substance abuse treatment, but the service was closed out the

---

[1]     The children's fathers' rights were previously terminated, and neither is a party to this appeal.

following month because of Mother's failure to participate. DCS again referred Mother for substance abuse treatment in March and June 2018, but both were closed out because of Mother's lack of engagement. She was assigned a case aide in February 2018, but she was closed out of services in July 2018 because of her lack of participation.

¶5        In August 2018, Mother requested DCS provide mental health services at a periodic review hearing. But Mother failed to attend the psychological evaluation scheduled for October and the rescheduled appointment in November.

¶6        In September 2018, DCS again referred Mother for substance abuse treatment and parent aide services, but by December 2018, both were closed out due to Mother's continued failure to participate. At the beginning of 2019, Mother wrote the case manager an email expressing regret for not "try[ing] as much as [she] should have" and asked for "more time to work on everything." The case manager immediately responded, stating that she had put in new referrals for a case aide and substance abuse treatment and asked to meet with Mother to discuss the case plan. Mother did not attend the initial intake appointment for substance abuse treatment and missed the meeting with the case manager because she "forgot [she] had to meet up with [her]" that day. The case aide service was closed out in February 2019 because Mother failed to engage in the service. Mother rescheduled her intake appointment with the substance abuse treatment provider for March 5, 2019, but missed that appointment as well. The provider sent Mother a letter warning it would close out services due to lack of participation, which prompted Mother to schedule another appointment for March 27, 2019. Mother did not attend, and the service was closed out.

¶7        In April 2019, DCS moved to terminate the parent-child relationship, alleging: (1) six-months' time-in-care, and (2) a history of chronic drug abuse. In August 2019, DCS amended its motion to add (3) nine-months' time-in-care; and (4) fifteen-months' time-in-care. Following a two-day hearing, the court granted the termination motion, finding DCS proved by clear and convincing evidence all four statutory grounds and established by a preponderance of the evidence that termination was in the children's best interests. Mother appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 8-235(A) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶8 The juvenile court terminated the parent-child relationship under A.R.S. § 8-533(B)(8)(c),[2] which requires DCS to establish by clear and convincing evidence that: (1) the children had been in court-ordered out-of-home placement for at least fifteen months; (2) DCS made a "diligent effort to provide appropriate reunification services"; but despite that effort, (3) Mother had been unable to remedy the circumstance causing the children to be in court-ordered out-of-home care; and (4) there was a substantial likelihood that Mother would not be capable of exercising proper and effective parental care and control in the near future. *Donald W. v. DCS*, 247 Ariz. 9, 17, ¶ 25 (2019). "When the statutory grounds for termination are challenged, we will affirm a termination order unless we must say as a matter of law that no one could reasonably find the evidence supporting statutory grounds for termination to be clear and convincing." *Id.* (quoting *Jordan C. v. ADES*, 223 Ariz. 86, 93, ¶ 18 (App. 2009)).

¶9 Mother's sole argument on appeal is that the juvenile court erred by terminating her rights because reasonable evidence does not support the court's finding that DCS made a diligent effort to provide reunification services. A diligent effort to provide reunification services requires DCS to identify the circumstance causing out-of-home placement, provide appropriate services to the parent to remedy the circumstance, maintain consistent contact with the parent, and make reasonable efforts to assist the parent where compliance proves difficult. *See Donald W.*, 247 Ariz. at 23, ¶ 50. However, DCS's responsibility is "not without limits and at some point the [parent] [i]s required to make a good faith effort to reunite the family." *Maricopa County Juv. Action No. JS-4283*, 133 Ariz. 598, 601 (App. 1982). DCS must provide the parent "with the time and opportunity to participate in programs designed to help [him or] her become an effective parent," but it "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa County Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).

¶10 Mother first argues that, although DCS identified mental health as a concern when removing the children, DCS failed to provide Mother services to address the mental health issues. She likens her situation

---

[2] "If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds." *Jesus M. v. ADES*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

to that in *Mary Ellen C.*, where the court reversed a termination order because the Department failed to make reasonable efforts to provide mental health services before moving to terminate the mother's parental rights. *Mary Ellen C. v. ADES*, 193 Ariz. 185, 193, ¶ 42 (App. 1999). In *Mary Ellen C.*, the mother "participated fully in all of the services offered to her and put forth her best efforts," but the Department neglected to provide meaningful services for more than a year after the children were removed, moved for termination before conducting a psychiatric evaluation, failed to offer the mother the services its expert recommended, and did not follow up with the mother's services or progress. *Id.* at 192–93, ¶¶ 35–40.

**¶11**      Here, DCS informed Mother that it "will consult with the unit psychologist once mother demonstrates 30 days of sobriety," which Mother did not do throughout the entirety of the case. Nevertheless, when Mother requested DCS provide mental health services in an August 2018 hearing, DCS made the referral. However, Mother did not attend the psychological evaluation scheduled for October, nor did she participate in the rescheduled appointment in November. Mother further argues that, although she stated she would be willing to participate in any services in January 2019, DCS did not refer her for mental health services. However, Mother did not engage in either of the two services DCS referred in January, nor did Mother attend the prior psychological evaluations, even when DCS provided transportation. There is no indication that yet another referral for a psychological evaluation would have produced a different outcome.

**¶12**      Next, Mother argues that DCS did not diligently communicate with her.[3] Mother's primary basis for this argument is that the case supervisor that took over in June 2019, after Mother's case manager left DCS, never personally contacted her. But the case supervisor testified

---

[3]      Mother argues that DCS failed to make a diligent effort because the case supervisor answered that she did not know whether Mother had an ID to be able to complete substance abuse testing. Other than Mother's attorney questioning the case supervisor at the hearing if she knew whether Mother had an ID, and arguing now that DCS did not make a diligent effort because the case supervisor did not know, there is no support for the insinuation that Mother had been unable to comply. Mother does not claim that she lacked an ID. She testified that she had been testing and the records show that, although inconsistent, Mother did test about ten times throughout the case. In a May 2018 DCS report, Mother stated that she was not able to test with TASC without an ID, but there are records of Mother testing with TASC.

that, rather than assigning a new case manager when the case was already a severance case, she assumed responsibility for the case. She assigned a support worker, who was a new case manager working under the supervisor, to continue working with Mother. And the support worker called and emailed Mother, trying unsuccessfully to meet with her in person.

¶13        Mother points to service letters that were returned as evidence that she was unaware of what was expected of her; however, the case manager also sent the service letters by email, and Mother responded to those emails. Mother also signed the service letter dated October 29, 2018. The record shows that DCS communicated with Mother by mail, by email, and by phone. The case manager promptly answered emails, referred—and continued referring—Mother for services throughout the dependency, and provided Mother with transportation. Despite DCS's diligent efforts, Mother failed to participate. Mother admitted as much when she emailed the case manager after the children had been in DCS's care for almost a year, stating that she had not tried as hard as she could have to remedy the circumstances. Reasonable evidence supports the juvenile court's finding that DCS made a diligent effort to provide Mother appropriate reunification services.

## CONCLUSION

¶14        We affirm the juvenile court's order terminating Mother's parent-child relationship with Adriel and Joseph.



AMY M. WOOD • Clerk of the Court
FILED:  AA