NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KIARA D., *Appellant*,

*v.*

RUDY N., R.N., *Appellees*.

No. 1 CA-JV 21-0334
FILED 5-10-2022

Appeal from the Superior Court in Maricopa County
No. JS20788
The Honorable Genene Dyer, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Denise Lynn Carroll Attorney at Law, Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant*

Logan Mussman Law, PLLC, Phoenix
By Logan Mussman
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Michael J. Brown joined.

---

**C R U Z**, Judge:

¶1　　　　Kiara D. ("Mother") appeals from the superior court's order terminating her parental relationship to her son, R.N. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2　　　　R.N. is the biological child of Mother and Rudy N. ("Father"), born July 2013. Mother and Father were never married. In March 2017, Mother moved to New Mexico, and Father filed a family court petition for parenting time, legal decision making, and child support. The court awarded the parties joint legal decision-making authority with Father as the final legal decision maker and primary residential parent. Mother received parenting time for one week per month until R.N. reached school age, and then one weekend each month. During the summer months, Mother received at least four weeks of parenting time. Given evidence that Mother may have a substance-abuse problem, the court ordered Mother to complete a parenting class, complete a substance-abuse assessment, and provide a hair follicle sample for testing. Mother was ordered to pay $330 in monthly child support. Both parties were ordered to share equally in medical costs not covered by insurance.

¶3　　　　In October 2018, Father filed a petition for contempt and modification of parenting time. He alleged Mother failed to complete the substance-abuse assessment, drug testing, and parenting class. Father also claimed that Mother failed to pay child support since September 2017 and refused to reimburse Father for $607.90 in medical expenses. Following a hearing which Mother failed to attend, the family court found Mother in contempt and ordered her to pay child support arrears in the amount of $1,354.53, as well as the $607.90 in medical expenses. The court found Mother was in contempt for failing to comply with the drug testing, substance-abuse assessment, and parenting-class requirements. Accordingly, the court found Mother was not allowed to remove R.N. from

Maricopa County until she complied with the court's orders, including testing negative for substances.

¶4 In October 2019, Mother attempted to visit R.N. in Arizona, but Father incorrectly believed Mother was not allowed unsupervised parenting time until she provided proof of the negative drug test, substance-abuse assessment, and parenting class. Father allowed Mother to visit with R.N. in his presence and outside his home for just a few minutes.

¶5 Mother's child support payments were automatically deducted from her paycheck, and she paid off her arrears. But Mother's phone calls to R.N. were infrequent, and no more than every few months. Mother also inconsistently sent R.N. gifts for holidays. Mother submitted a drug test as ordered by the court, which tested negative for illicit substances. However, Mother failed to reimburse Father for her share of the medical costs, and she failed to complete the parenting class or a substance-abuse assessment.

¶6 In March 2021, Father filed a petition to terminate Mother's parental relationship to R.N., claiming she had abandoned him and that termination was in his best interests. After the petition was filed, Mother paid the outstanding medical expenses and sent R.N. a birthday gift. Mother made one other attempt to visit R.N., but Father notified Mother they were out of town on the date she requested.

¶7 A two-day termination adjudication was held. The superior court found Mother had abandoned R.N. and terminated her parental relationship to R.N., also finding termination was in his best interests. Mother timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

¶8 Although the right to custody of one's children is fundamental, it is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). To terminate a parental relationship, the superior court must find by clear and convincing evidence at least one of the grounds for termination in A.R.S. § 8-533(B), and also by a preponderance of the evidence that termination is in the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018). "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz.*

3

*Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). This court does not reweigh the evidence and will look only to determine if there is reasonable evidence to sustain the court's ruling. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). We will affirm the superior court's ruling unless it is clearly erroneous. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016).

I.      Abandonment

**¶9**      Father's petition sought termination of Mother's rights based on abandonment. A.R.S. § 8-533(B)(1). "Abandonment" is defined as

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1).

**¶10**      "[A]bandonment is measured not by a parent's subjective intent, but by the parent's conduct . . . ." *Michael J.*, 196 Ariz. at 249, ¶ 18. "What constitutes reasonable support, regular contact, and normal supervision varies from case to case." *In re Pima Cnty. Juv. Action No. S-114487*, 179 Ariz. 86, 96 (1994). Because the concept of abandonment and terms like "reasonable support" or "normal parental relationship" are imprecise and elastic, these are questions of fact left to the superior court to resolve. *Maricopa Cnty. Juv. Action No. JS-4283*, 133 Ariz. 598, 601 (App. 1982). Relevant facts for the court to consider include whether Mother "visited [R.N.] regularly, the nature of her relationship with [R.N.] and whether, within that context, she provided parental supervision and guidance as the circumstances allowed." *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37, ¶ 20 (App. 2010). Further, the court may consider evidence of gifts, clothes, cards, and food Mother provided to R.N., and whether she "voluntarily contributed additional funds to [Father] to support [R.N.'s] upbringing." *Id.*

**¶11**      Mother argues there is insufficient evidence to support a finding of abandonment. We disagree. Mother voluntarily moved out of state without R.N. in 2017. In February 2019, the family court ruled that Mother was allowed to have out-of-state visitation only if she completed a

parenting class, substance-abuse assessment, and provided a hair follicle test. However, Mother did not disclose the hair follicle test to Father until termination proceedings began, she did not complete the parenting class until July 2021, and she failed to complete the substance-abuse assessment. As a result, R.N. has not visited Mother in New Mexico since before February 2019. Even in Arizona, the last time Mother saw R.N. in person was October 2019 and only for a few minutes. Mother has never been to any of R.N.'s sporting events or school conferences, and she never sought information regarding school, sports, medical appointments, or other events in R.N.'s life. Mother testified that since 2019, she has only spoken on the phone or video chatted with R.N. once every few months for about fifteen to twenty minutes each conversation. Father testified that Mother spoke with R.N. only a "handful of times" in 2019, did not speak to R.N. on the phone a single time in 2020, and spoke to R.N. only three or four times in 2021.

¶12         While Mother has provided child support, she was previously inconsistent with her child support payments, not making a single payment between September 2017 and February 2019, and her payments were not consistent until she was ordered to have her child support automatically deducted from each paycheck. For three years, Mother refused to pay R.N.'s outstanding medical costs, and she did not reimburse Father until a week before the termination hearing. Mother admitted that she did not send R.N. any Christmas gifts during 2020 and could not remember if she sent a birthday gift. Father alleged Mother often failed to send Christmas or birthday gifts. Mother claimed she has sent R.N. backpacks, supplies, clothes, and shoes each year before school except in 2021, but Father testified that Mother had not sent any back-to-school supplies or clothes in three or four years. The record shows Mother has made only minimal efforts to support and communicate with R.N.

¶13         Mother contends Father took "affirmative steps to isolate her from the child and to destroy their relationship," citing *Calvin B. v. Brittany B.*, 232 Ariz. 292 (App. 2013). Mother claims Father limited her phone calls to R.N., but she also testified that she was allowed to speak to R.N. on the phone "almost every time" she asked, and she was only denied phone calls when Father said R.N. was unavailable due to dinner or sports practice. Father denied ever preventing Mother from speaking to R.N. on the phone. *See Jesus M.*, 203 Ariz. at 280, ¶ 4 (the superior court is in the best position to judge the credibility of the witnesses and we do not reweigh conflicting evidence on appeal). Mother also admitted that she did not try to call R.N. often, and only called him once a month.

¶14         Mother contends Father prevented her from exercising her visits in Arizona.  But Mother testified that she had only tried to visit R.N. twice since 2019.  Father and R.N. were out of town on vacation during one of these attempts.  The other time, Father admitted that he incorrectly did not allow Mother to take R.N. until she provided him with proof of completing the parenting class, drug test, and substance-abuse assessment pursuant to the February 2019 court orders.  Mother did not attempt to enforce her rights to parenting time by pursuing relief from the family court.

¶15         The superior court found that Father's actions did "not rise to the level of interference required to establish a defense to abandonment." Unlike the parent in *Calvin B.*, Mother did not actively seek involvement in R.N.'s life, nor did she "act persistently to establish the relationship however possible" or "vigorously assert [her] legal rights to the extent necessary."  *Michael J.*, 196 Ariz. at 250, ¶ 22 (citation and internal quotation marks omitted); *see also Calvin B.*, 232 Ariz. at 297, ¶ 22.  Mother's contacts with R.N. have been infrequent and sporadic, and she has not provided any supervision of R.N. for more than three years.  The record supports a finding that this irregular contact has been the result of Mother's inaction and not the result of Father's conduct.  Mother has not shown that the court erred in finding that she abandoned R.N.

II.     Best Interests

¶16         Mother also argues the court erred in finding that termination was in R.N.'s best interests.  Termination is in a child's best interests if the child will benefit from the termination, or the child will be harmed if the court denies it.  *Alma S.*, 245 Ariz. at 150, ¶ 13.  In making the determination, the court evaluates the totality of circumstances at the time of trial, considering factors such as the availability of an adoption plan, the bond between the parent and the child, and the negative effect on a child of the continued presence of a statutory ground for termination.  *Id.* at 150-51, ¶ 13; *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98-99, ¶¶ 10-12 (App. 2016); *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23 (App. 2013).

¶17         The court found termination was in R.N.'s best interests because R.N.'s stepmother, whom R.N. referred to as "mom" and had been a stable maternal figure in his life, wanted to adopt him, and was concerned over R.N.'s stability in the event Father was to lose his life.  The court also found that R.N. would be harmed without termination, because he has been negatively impacted by Mother's sporadic contact.  There was testimony

that R.N. and Mother were not bonded, he did not enjoy speaking on the phone with Mother, and R.N. wanted to be adopted by his stepmother. The court's best-interests findings are supported by the record. Mother has shown no error.

## CONCLUSION

¶18     For the foregoing reasons, we affirm.

